OPINION OF THE COURT
Elliott Wilk, J.
These summary proceedings were commenced to evict three residential tenants for nonpayment of rent. The landlord has not included a multiple dwelling registration number in its petition, but alleges that the building, which is attempting to register with the Loft Board, is an interim multiple dwelling under the 1982 Loft Law (Multiple Dwelling Law, art 7-C, as added by L 1982, ch 349).
The tenants move to dismiss on the ground that the landlord has failed to allege registration of the building as a multiple dwelling. The tenants also contend that the landlord cannot plead interim multiple dwelling status because the building has previously been adjudicated a de facto multiple dwelling and has already been declared to be subject to rent control.
*921 In 1979, the landlord commenced summary holdover proceedings against these same three tenants (L&T index Nos. 114859-114862 of 1979). After trial, Judge Herman Cahn, by decision dated May 13, 1980, held that the building is a de facto multiple dwelling and, under the authority of 155 Wooster St. Assoc. v Bengis (NYLJ, July 2, 1979, p 12, col 1 [App Term, 1st Dept]), dismissed the petitions for failure to prove the issuance of a multiple dwelling registration number.
In a subsequent administrative proceeding, the Commissioner of the Department of Housing Preservation and Development, by order dated August 28, 1980, held that the building is subject to the rent control law and regulations. This determination, which was never challenged by the landlord, is not subject to collateral attack. (Chatsworth 72nd St. Corp. v Rigai, 35 NY2d 984; Carnegie Hall Corp. v Duchein, NYLJ, July 14, 1982, p 6, col 1 [App Term, 1st Dept].)
The landlord asserts that despite these prior determinations the premises fall within the classification of “interim multiple dwelling” as defined in the 1982 Loft Law (Multiple Dwelling Law, § 281).
It is clear that this building is not subject to regulation under the Loft Law even if it does meet the tests set forth in section 281.*
The 1982 Loft Law is designed to provide for the transition of unregulated loft dwelling units into the rent stabilization system. The statutory background of this law indicates that the Legislature was addressing tenancies of “uncertain status” and “unregulated residential conversions”. (Multiple Dwelling Law, § 280.) The law creates the classification of “interim multiple dwelling” to permit regulation by the Loft Board during the transition from unregulated status to rent stabilization.
No building can be subject to both rent control and the Loft Law inasmuch as the two serve separate purposes. There are probably scores of buildings in New York City *922 presently subject to rent control or rent stabilization which might otherwise meet the tests of section 281. The Loft Law was intended to harmonize with existing forms of regulation rather than to replace them.
Despite the judicial and administrative rulings made in 1980, the landlord has apparently taken no steps to obtain a multiple dwelling registration number. In its present posture, it seeks the court’s approval of its three-year avoidance of its responsibilities both under the Housing Maintenance Code (Administrative Code of City of New York, § D26-1.01 et seq.) and under the Rent Control Law. Neither the “flexible approach” suggested in Corris v 129 Front Co. (85 AD2d 176), nor the 1982 Loft Law were intended to effect this result. Section D26-41.01 (subd b, par [1]) of the Housing Maintenance Code requires that every multiple dwelling be registered. Subdivision b of section D26-41.21 provides that an owner who is required to file a registration statement and fails to do so “shall be denied the right to recover possession of the premises for non-payment of rent during the period of non-compliance”.
Accordingly, the petitions are dismissed.

 There is some doubt as to whether the building was ever “occupied for manufacturing, commercial, or warehouse purposes” as required by section 281 (subd 1, par [i]) of the Multiple Dwelling Law. The commissioner’s order of August 28, 1980 states that “there has not been a change from a non-residential usage to a residential usage on or after February 1, 1947.”