■ BLACKGOLD REALTY CORP., Appellant, v ROBERT S. MILNE, Respondent. BLACKGOLD REALTY CORP., Appellant, v SOLANGE MARCIN, Respondent. BLACKGOLD REALTY CORP., Appellant, v CHARLOTTE DURHAM, Respondent.—Order, Appellate Term, First Department (Dudley, P. J., Riccobono and Sandifer, JJ.), entered September 19, 1984, which unanimously affirmed orders of the Civil Court, New York County (Wilk, J.) (119 Misc 2d 920), entered August 5, 1983, granting the tenants' motions to dismiss the petitions in three summary eviction nonpayment proceedings pursuant to CPLR 404, affirmed, without costs.

The issue presented is whether Multiple Dwelling Law article 7-C (Loft Law, L 1982, ch 349) applies to premises which have already been determined to be multiple dwellings subject to the Rent Control Law. Respondents tenants Robert Milne, Solange Marcin, and Charlotte Durham have resided separately in the upper three full-floor units of the building located at 106 Prince Street, the former two since 1962 and the latter since 1966. The premises are a five-story building with retail store space on the ground floor. They are situated in an M1-5A zone, a commercial district where residential uses are permitted pursuant to administrative certification by the New York City Board of Standards and Appeals.

Petitioner-appellant Blackgold Realty acquired title to the building and in November 1982, filed a registration statement to register the building with the Loft Board as an "interim

multiple dwelling" pursuant to Multiple Dwelling Law § 281. It then commenced summary holdover proceedings against respondents, seeking the rent fixed in accordance with the Rent Control Law by the Rent Commissioner following a tenants' protest in 1980. Respondents moved to dismiss the proceedings pursuant to CPLR 404 on grounds essentially set forth in the dissent. They requested leave to interpose answers should their motions be denied.

Civil Court (Wilk, J.) expressed doubt that the building qualified for coverage as an "interim multiple dwelling". The court held that, even were the building to meet the definitional requirements, the 1982 Loft Law was not intended to encompass premises already determined to be subject to the Rent Control Law. Judge Wilk reasoned that the purpose of the Loft Law was to provide for the transition of unregulated loft dwelling units into the rent stabilization system and to harmonize with, rather than supplant, existing forms of regulation.

The Loft Board issued a registration number to Blackgold for the subject premises during the pendency of the motions to dismiss. However, it revoked the registration number based upon the Civil Court decision. On appeal to the Appellate Term, Blackgold supplemented the record with a page from the winter 1929-1930 Manhattan telephone directory listing four commercial occupants at 106 Prince Street. The Appellate Term, First Department, affirmed for the reasons stated by the Civil Court Judge and granted petitioner's motion for leave to appeal.

We agree with the conclusion that the petitions fail to state a cause of action, but for reasons slightly different than those articulated by the Civil Court. We differ in that we find the subject premises do not meet the definitional criteria of Multiple Dwelling Law § 281. Accordingly we affirm the determination at the Appellate Term.

On a motion to dismiss a pleading for insufficiency, where extrinsic evidence is introduced, the allegations are not deemed true. The inquiry is whether the pleader has a cause of action, not whether he has properly stated one. The motion should be granted where the essential facts have been negated beyond substantial question by the affidavits and evidentiary matter submitted. (*Guggenheimer v Ginzburg*, 43 NY 2d 268, 275 [1977].)

In light of the affidavits and evidence submitted concerning prior, albeit inconclusive, determinations in 1980 as discussed

below, Blackgold failed to raise a substantial issue of fact as to prior commercial use and conversion of the subject premises. Civil Court's rationale was in error to the extent that it held the doctrine of collateral estoppel precluded Blackgold from attacking the Rent Commissioner's determination. *(Gilberg v Barbieri,* 53 NY2d 285, 292 [1981].) Since the Rent Commissioner's order and opinion, dated August 28, 1980, resolved a tenants' rent protest, it only necessarily determined that the premises were subject to the Rent Control Law based upon residential use on February 1, 1947, and no change in the character of that use thereafter. Similarly, the Civil Court's (Cahn, J.) decision dated May 13, 1980, which dismissed a prior holdover proceeding against respondents and another tenant only necessarily determined that there had been no conversion from commercial to residential use during respondents' occupancy. The broader issue under the Loft Law is whether the subject premises were ever used for commercial purposes.

The prior judicial and administrative determinations, when jointly considered, review the entire history of the occupancy and use of the the subject premises and support respondents' contentions. The Rent Commissioner's order details substantial evidence that the building was constructed in approximately 1865, and was used residentially until 1903. The subject accommodations were vacant from 1903 to the early 1930's, when they were again occupied for residential use.

In our view, Blackgold failed to go forward with sufficient evidence to withstand dismissal. As to the 1929-1930 telephone directory listings, Blackgold does not dispute respondents' explanation that the listings relate only to commercial tenants on the ground floor. Indeed, the retail store space on the ground floor of the building is now used for commercial purposes. In pertinent part, Multiple Dwelling Law § 281 (1) defines an "interim multiple dwelling" as "any building or structure or *portion thereof* * * * which (i) at any time was occupied for manufacturing, commercial, or warehouse purposes" (emphasis added). By the same token, it would appear that any portion of a building never used for commercial purposes would be exempt from coverage under section 281.

The 1963 notice of violation similarly pales in significance under close scrutiny. The notice recites that the violation was based upon illegal conversion to commercial use in a *multiple dwelling.* Blackgold does not controvert respondents' claim that the printing press (for silk-screen Christmas cards) on the third floor and the "photographs" (amateur photography

equipment) on the fourth floor described by the notice were located for a brief period in a residential space. These commercial uses were de minimis in nature and duration, and are plainly not within the purview of the Loft Law.

In any event, we agree with Special Term that the Loft Law has no application under the circumstances of the present case even if the subject building were otherwise to qualify. The legislative findings of Multiple Dwelling Law, article 7-C, § 280 specifically refer to tenancies of "uncertain status" and "illegal and unregulated residential conversions" in buildings formerly used for manufacturing, warehousing, and commercial purposes. Article 7-C was enacted in response to the serious public emergency created by illegal conversions of commercial spaces to residential use. The statute is designed to integrate these uncertain and unregulated residential units, converted from commercial use, into the rent stabilization system in a manner which ensures compliance with the Multiple Dwelling Law and various building codes. *(See, Ancona v Metcalf,* 120 Misc 2d 51, 54 [Civ Ct, NY County 1983].)

The tenancies at issue are clearly outside the scope of the intendment of the Loft Law. In 1980, the Rent Commissioner and Civil Court determined their lawful, rent-controlled status. They are neither unregulated and uncertain tenancies, nor illegal residential conversions. Thus, there is no need to invoke the aegis of the Loft Board initially to provide for interim, then for rent-stabilized regulation. Similarly, by virtue of its rent-controlled status, the premises are already subject to minimum housing standards.

In our view, a reasonable construction of the Loft Law does not extend to the decontrol of housing units already subject to the Rent Control Law. We agree with Civil Court that the Loft Law and the Rent Control Law serve distinct purposes, and should not be construed to apply simultaneously to the same premises. Speaking to the issue of statutory construction, *Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.* (66 NY2d 298, 304), the case relied on by the dissent, states: "statutes in pari materia are to be construed together and 'as intended to fit into existing laws on the same subject unless a different purpose is clearly shown' [citation omitted]." The Loft Law contemplates unregulated residential units converted from commercial use. The Rent Control Law contemplates units which, like the premises at issue, have been residential since February 1, 1947. Appellant's strained argument to the contrary relies solely upon the language of Multiple Dwelling Law § 280, referring to prior judicial deter-

minations of "de facto" multiple dwelling status. This language is best read in conjunction with the section's reference to uncertain, unregulated tenancies, rather than in isolation. On the other hand, the Loft Law is designed ultimately to integrate tenancies into the rent stabilization system. Therefore, the Loft Law and the Rent Stabilization Law may be read together and applied simultaneously to the same "de facto" multiple dwelling. *(See, Newmann v Mapama Corp.,* 96 AD2d 793, 795 [1st Dept 1983].)

Considerations of equity and public policy favor this result. Both the Rent Control Law and the Loft Law are generally designed, *inter alia,* to address the housing emergency in New York City by insuring adherence to minimal housing standards. We are unwilling to disregard appellant's neglect of its obligations under the Multiple Dwelling Law for three years. The tenants' protracted rent strike is understandable, since it stemmed from the failure of appellant's predecessor to provide essential services. Under the Loft Law, an owner may maintain a proceeding for possession and retroactive rent notwithstanding a failure to comply with obligations under the Multiple Dwelling Law. (Multiple Dwelling Law § 285 [1]; *compare,* Multiple Dwelling Law §§ 302, 325; Administrative Code of City of New York § D26-41.01 [b] [1]; § D26-41.21 [b].) In our view it would be inequitable to extend the provisions of the Loft Law to appellant. Concur—Asch, Milonas and Rosenberger, JJ.

Kupferman, J. P., dissents in a memorandum as follows: In this summary eviction nonpayment proceeding, the petitioner landlord appeals from a unanimous Appellate Term affirmance of Civil Court orders granting the tenants respondents' motions to dismiss the proceedings pursuant to CPLR 404 *(see,* CPLR 3211 [a] [7]).

The respondents, three tenants at 106 Prince Street in a five-story building with retail store space on the street level and four loft units above located in a manufacturing use only zone (M1-5A), have been there for some 20 years but have paid no rent for over three years.

The landlord's eviction proceedings alleged the building to be an interim multiple dwelling with a registration on file with the Loft Board (Multiple Dwelling Law art 7-C). The petitions sought only the rent fixed by the Office of Rent and Housing Maintenance.

The defense, accepted by the courts below, was that the building was already declared a multiple dwelling subject to

rent control, and that the landlord had not obtained a multiple dwelling registration and was therefore banned under Multiple Dwelling Law §§ 301 and 302 from maintaining these proceedings. *(See,* § 325.)

The landlord's predecessor had attempted in 1979 to evict these tenants on the ground of an illegal residential use, but was unsuccessful. The premises were determined as a practical matter to be "living lofts" with the consent of the landlord.

The present landlord has attempted to bring the building under the Loft Board aegis, but has been thwarted by a ruling that the building could not be "subject to both rent control and the Loft Law inasmuch as the two serve separate purposes." (119 Misc 2d 920, 921.) As the Court of Appeals has just recently pointed out in *Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.* (66 NY2d 298), where the "primary residence rule" was sustained in its application to the loft hybrid, the Loft Law should be construed together with other residential protection laws and not in contradistinction thereto.

I would reverse, deny the motions, reinstate the petitions and direct that answers be served to the petitions within 20 days of the publication hereof.