*95 OPINION OF THE COURT
Memorandum.
Final judgment unanimously reversed with $30 costs and matter remanded for a new trial before a judge of the Civil Court.
Tenant’s primary defense in this “commercial” nonpayment proceeding is that this proceeding does not lie because her loft is located in an unregistered de facto multiple dwelling (Multiple Dwelling Law § 325 [2]; Administrative Code of City of NY § 27-2107; Matter of Blackgold Realty Corp. v Milne, 119 Misc 2d 920, affd 126 Misc 2d 721, affd 119 AD2d 512, affd 69 NY2d 719; Jalinos v Ramkalup, 255 AD2d 293; Harris v Corbin, 79 Misc 2d 971).
Landlord leases two floors of the building located at 475 Kent Avenue, Brooklyn, pursuant to a prime lease for a 10-year term commencing October 1, 1998. The prime lease provides that the demised premises is to be used only as commercial loft space. A rider to the prime lease states that landlord is leasing the two floors for the purpose of dividing them into artist studios. Landlord installed 11 units on each of the two floors that it leases. Tenant moved into the subject unit in April 1999.
At trial, landlord’s principal Paul Shay denied that he knew that tenant and the other occupants of the units on his two floors were living in their units. Although he admitted that 19 of his 22 units have full bathrooms, that he had installed gas lines into some of the units, and that he knew that some of the 22 units had stoves, he claimed that sinks, toilets, and gas lines are all legal in commercial spaces.
Tenant testified that before she moved in, she advised Mr. Shay that she was looking for a loft that could be used as both a working and living space; that Shay suggested that she look at the other units on her floor that were already occupied; that she did this and saw bathrooms, sinks and stoves being installed; that, at Shay’s suggestion, she drew a diagram of where she wanted him to locate her bathroom and kitchen; that Shay was inside her unit in October 1999 and saw how it was set up; and that most of landlord’s 22 units were used as living or living and working spaces. Tenant named some of the other tenants who were living in their units with their families.
After trial, the Civil Court awarded a final judgment in favor of landlord. The court reasoned that tenant was bound by the restriction in the prime lease, which provided that the space *96 was to be used as commercial loft space. The court made no finding as to whether landlord knew of and acquiesced in the tenants’ residential use of the premises.
In our view, the matter must be remanded for a new trial.
The Multiple Dwelling Law defines a “dwelling” as “any building or structure or portion thereof which is occupied in whole or in part as the home, residence or living place of one or more human beings” (Multiple Dwelling Law § 4 [4]; emphasis added) and defines a “multiple dwelling,” as here relevant, as “a dwelling which is * * * occupied as the residence or home of three or more families living independently of each other.” (Multiple Dwelling Law § 4 [7].) Both the Multiple Dwelling Law and the Administrative Code require that the “owner” of a multiple dwelling register with the Department of Housing Preservation and Development (Multiple Dwelling Law § 325 [1]; Administrative Code § 27-2097).
The purpose of the registration requirement is to enable tenants and government authorities to readily contact owners and other persons responsible for the operation of multiple dwellings (390 W. End Assoc. v Raiff, 166 Misc 2d 730, 733). In keeping with this purpose, the Multiple Dwelling Law broadly defines “owner” to include a “lessee, agent, or any other person, firm or corporation directly or indirectly in control of a dwelling” (Multiple Dwelling Law § 4 [44]). In light of the language and purpose of the statute, we conclude that both its spirit and letter would require that the instant premises be registered if landlord knew of and acquiesced in the residential use (Mandel v Pitkowsky, 102 Misc 2d 478, affd 76 AD2d 807; see, Metzendorf v 130 W. 57 Co., 132 AD2d 262 [a landlord who knows that commercial premises will be used residentially is subject to the Rent Stabilization Law]; cf., 2009-2011 Third Ave. Corp. v Fifth Ave. Community Ctr. of Harlem, 169 Misc 2d 67 [where net lessee creates the conditions requiring registration, net lessor not bound to register]). Because the Civil Court made no finding of fact as to whether landlord knew of and acquiesced in the residential use, and this finding must be predicated on a determination of credibility, the matter is remanded for a new trial.
Aronin, J.P., Patterson and Golia, JJ., concur.