[911 NYS2d 356]

In the Matter of NUR ASHKI JERRAHI COMMUNITY, Respondent-Appellant, v NEW YORK CITY LOFT BOARD, Appellant-Respondent, and PATRICIA THORNLEY, Respondent-Appellant.

First Department, November 30, 2010

**APPEARANCES OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel,* New York City (*Jane L. Gordon, Edward F.X. Hart* and *Kristin M. Helmers* of counsel), for appellant-respondent.

*Belkin Burden Wenig & Goldman, LLP*, New York City (*Joseph Burden, Robert A. Jacobs, Sherwin Belkin* and *Magda L. Cruz* of counsel), for Nur Ashki Jerrahi Community, respondent-appellant.

*Simon, Eisenberg & Baum, LLP*, New York City (*Sheldon Karasik* and *Harry J. Gaffney* of counsel), for Patricia Thornley, respondent-appellant.

### OPINION OF THE COURT

CATTERSON, J.

The issue raised by the New York City Loft Board in this CPLR article 78 proceeding is whether the four-year statute of limitations in CPLR 213-a, titled "Actions to be commenced within four years; residential rent overcharge," applies to overcharge claims brought by Loft Law-covered tenants. We find that the rationale that led this Court to conclude recently in *Matter of Hicks v New York State Div. of Hous. & Community Renewal* (75 AD3d 127 [1st Dept 2010]) that the four-year statute of limitations does not apply to rent-controlled residences may be similarly applied to interim multiple dwellings covered under the Loft Law.

Patricia Thornley is the tenant of unit 5B, an interim multiple dwelling (hereinafter referred to as IMD) under article 7-C of the Multiple Dwelling Law (hereinafter referred to as the Loft Law), at 5-7 White Street in Manhattan. Sal Cucinotta, a prior owner, registered the building as an IMD with the Loft Board in 1983, listing the loft as a covered unit, Alfred Hyatt as the tenant, and the rent as $770 per month.

After Hyatt's death in 1986, his estranged wife and his live-in partner fought over successor rights to the loft. However, in a holdover proceeding, possession was granted to Cucinotta. Following the evictions, Thornley entered into a lease of unit 5B in July 1990 containing a rider acknowledging the building's IMD status, but waiving coverage under the Loft Law. She has since executed three lease renewals, each containing the same waiver. Cucinotta sold the building in 1992 to Masjid Al-Farah, also known as 5-7 White Street Company.

On March 6, 2006, Thornley filed two applications with the Loft Board: a coverage application requesting a determination that she was a protected tenant under the Loft Law, and an overcharge application requesting a determination that she had been overcharged in excess of the IMD registered rent of $770 per month for the four-year period from February 2002 through February 2006.

The applications were consolidated and referred to the Office of Administrative Trials and Hearings (hereinafter referred to as OATH). At the conclusion of the proceedings, the Administrative Law Judge (hereinafter referred to as ALJ) found that Thornley was covered by the Loft Law and recommended that the Loft Board grant Thornley's motion for summary judgment. The ALJ further recommended an award of $62,880.80, the amount Thornley was overcharged in the four years prior to her filing of the application pursuant to New York City Loft Board Regulations (29 RCNY) § 1-06.1 (c).

After the issuance of the ALJ's report and recommendation, but pending the Loft Board's final decision, the building was sold to petitioner Nur Ashki Jerrahi Community (hereinafter referred to as the Owner), which sent a letter to the Loft Board asserting that CPLR 213-a rendered Thornley's application untimely. Upon review of the ALJ's recommendations, the Loft Board, without addressing the statute of limitations issue raised by the Owner, issued its final order consistent with the ALJ's recommendations.

The Owner petitioned for article 78 judicial review, and in its November 19, 2008 decision, Supreme Court annulled the order on the grounds that Thornley's claim for overcharge was untimely under CPLR 213-a. (22 Misc 3d 555 [2008].) Upon reargument, the court upheld the Loft Board's finding that Thornley's tenancy was protected by the Loft Law, but affirmed its earlier determination that her rent overcharge claim was time-barred.

On appeal, the petitioner Owner argues that Supreme Court erred in upholding the Loft Board's determination that Thornley is protected under the Loft Law. Respondents Loft Board and Thornley appeal, asserting that the Owner's statute of limitations defense was not timely raised but, in the alternative, that Supreme Court erred in applying CPLR 213-a, which states that an "action on a residential rent overcharge shall be commenced within four years of the *first* overcharge alleged" (emphasis added). The respondents assert instead that 29 RCNY 1-06.1 (c) applies, pursuant to which the four-year limitation limits recovery but does not restrict how far back the Loft Board can examine the rent history in order to compute overcharges. For the reasons set forth below, we agree with respondents that CPLR 213-a does not apply to Loft Board overcharge proceedings.

As a threshold matter, the petitioner Owner failed to demonstrate that the unit was deregulated from coverage, depriving

the tenant of protection under the Loft Law. The Owner specifically asserts that three deregulatory events—the death of the predecessor IMD tenant, the sale of rights, and waiver by Thornley—preclude such a finding. However, the record contains no finding of abandonment under 29 RCNY 2-10 (f) (1) and no reliable evidence of a prime lessee's sale of improvements under Multiple Dwelling Law § 286 (6) (*see* 29 RCNY 2-10 [b]). In addition, the Loft Law contains no broad waiver exception. It is a governmental residential regulatory scheme that is not subject to waiver by the tenant. (*Matter of Jo-Fra Props., Inc.*, 27 AD3d 298, 299 [1st Dept 2006], *lv denied* 8 NY3d 801 [2007].)

▪ Furthermore, the Owner's statute of limitations defense was timely raised. Judicial review of administrative determinations is limited to the facts adduced and the record made before the administrative agency, and arguments raised before the agency are preserved on appeal. (*Matter of L&M Bus Corp. v New York City Dept of Educ.*, 71 AD3d 127, 135-136 [1st Dept 2009].)

Although it was not raised before the ALJ at the OATH hearing, the statute of limitations defense was raised in a letter sent to the Loft Board before its final decision. The Loft Board guidelines state that the purpose of the hearing before the ALJ is merely to provide a recommendation for the Loft Board to consider in making its final decision. (29 RCNY 1-06 [n].) 48 RCNY 1-52 also specifically provides for submission of motions brought after issuance of the ALJ's report and recommendations to "the deciding authority," which in this case was the Loft Board. Therefore, the fact that the letter was not considered by the ALJ does not render the defense untimely.

▪ However, this does not help the petitioner Owner since CPLR 213-a does not apply to IMD covered units subject to Loft Board rent regulation, just as it does not apply to rent-controlled apartments or New York Division of Housing and Community Renewal (hereinafter referred to as DHCR) administrative rent control proceedings. (*See Matter of Hicks*, 75 AD3d at 131 [holding that CPLR 213-a does not apply to rent-controlled dwellings or DHCR administrative proceedings].)

In *Matter of Hicks*, this Court held that the 1997 amendment to CPLR 213-a was not intended to supersede rent regulation limitations in all other regulatory schemes. (*See* 75 AD3d at 131.) Moreover, there is no indication that in amending CPLR 213-a, the Legislature intended to expand the scope of the CPLR beyond judicial actions to administrative proceedings. (75 AD3d

at 133.) *Matter of Hicks* concluded, "the CPLR does not purport to dictate the procedure to be applied in administrative matters; and . . . it clearly does not supplant the procedures specified by . . . regulations promulgated in the exercise of an agency's administrative prerogative." (75 AD3d at 133; *see also Matter of Sori-Goalya Realty v New York City Loft Bd.*, 284 AD2d 137, 137-138 [1st Dept 2001], *lv denied* 97 NY2d 601 [2001] [holding that CPLR 213-a does not apply to Loft Board proceedings and is limited to civil judicial proceedings].)

As this Court held in *Matter of Hicks*, the limited scope of CPLR 213-a is evident from the Legislature's failure to amend the Rent and Rehabilitation Law when it amended the Rent Stabilization Law, leaving intact inconsistent limitations periods for rent-controlled units. (*Matter of Hicks*, 75 AD3d at 132, quoting *People v Finnegan*, 85 NY2d 53, 58 [1995], *cert denied* 516 US 919 [1995] ["(t)he failure of the Legislature to include a substantive, significant prescription in a statute is a strong indication that its exclusion was intended"].) Rent stabilization and rent control apply to different types of housing and, while consolidated for administration by the DHCR, remain separate and distinct bodies of law with different regulations. (*See* 9 NYCRR ch VII, part 2200 ["Emergency Housing Rent Control"] and 9 NYCRR ch VIII, part 2520 ["Rent Stabilization Regulations"]; *see also Matter of Hicks*, 75 AD3d at 132.) Therefore, an "amendment to the Rent Stabilization Law can[not] be deemed to amend the Rent and Rehabilitation Law by implication." (*Matter of Hicks*, 75 AD3d at 132.)

Similarly, as this court previously decided in *Sori-Goalya Realty*, the Rent Regulation Reform Act of 1997 (L 1997, ch 116 [hereinafter referred to as RRRA]), which amended the Rent Stabilization Law (hereinafter referred to as RSL) and CPLR, did not by implication amend the Loft Law or Loft Board regulations because the RRRA does not refer to the Loft Law. (284 AD2d at 137-138.)

Despite our precedent to the contrary, the petitioner urges us to construe the Loft Law in pari materia with the RSL, as we did for the purpose of providing the remedy of eviction when a loft tenant engages in rent gouging. (*See BLF Realty Holding Corp. v Kasher*, 299 AD2d 87, 93 [1st Dept 2002], *lv dismissed* 100 NY2d 535 [2003] [noting that because "profiteering, in the context of both rent stabilization and rent control, constitutes an incurable ground for eviction, the same result should obtain under the Loft Law"], citing *Matter of Lower Manhattan Loft*

*Tenants v New York City Loft Bd.*, 66 NY2d 298, 304 [1985].) We decline to do so here.

It is clear that the RRRA's amendment of CPLR 213-a was intended to complement the RSL, as indicated in the Sponsor's Memorandum, which in relevant part states:

> "When it amended the Rent Stabilization law, the Legislature intended not only to limit an award for a rent overcharge to the four-year period preceding the complaint, but also the examination of the rental history to that four-year period. This is evident not only from the express terms of the statute itself, which precludes an award 'based upon an overcharge having occurred more than four years before the complaint,' but also by the provisions which limited an owner's obligation to produce rent records to the four-year period. [I]t is the intention of the Legislature to preclude the examination of the prior rental history." (Mem of Senator Leibell in Support of 1996 NY Senate Bill S7492; *see also Matter of Hicks*, 75 AD3d at 131 [noting that "the legislative history makes clear that (CPLR 213-a) applies only to rent-stabilized dwellings"].)

Thus the purpose of implementing the four-year statute of limitations was to relieve owners from having to retain rent records indefinitely. (*Matter of Ador Realty, LLC v Division of Hous. & Community Renewal*, 25 AD3d 128, 136 [2d Dept 2005], citing *Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 149 [2002].) Under the RSL, rent overcharges are calculated from the base date rent which is the rent registered with the DHCR four years prior to the most recent registration statement:

> "Where the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter." (Administrative Code of City of NY [RSL] § 26-516 [a] [i].)

However, as Supreme Court correctly observed, unit 5B is not regulated under the RSL because it is not yet legalized for residential use. IMD lofts are governed by article 7-C of the Multiple Dwelling Law, state legislation made applicable to New York City as a municipality with a population of more than one mil-

lion. (Multiple Dwelling Law § 281 [1].) *Recovery* for rent overcharges in a proceeding before the Loft Board is restricted to the four years prior to the date the claim is filed:

> "An application for rent overcharges shall be filed within four years of such overcharge. Overcharges shall not be awarded for the period prior to the date of filing of a coverage or registration application, nor for more than four years before the date on which the application for overcharge was filed." (29 RCNY 1-06.1 [c].)

In *Sori-Goalya Realty*, we held that "the rental history limitations in these statutes [CPLR 213-a and RSL § 26-516 (a) (2)] should not be read into the Loft Board [s]tatute of [l]imitations," thereby permitting the Loft Board to look beyond four years at the rental history in order to determine whether there has been a rent overcharge. (284 AD2d at 138.)

Our interpretation of the scope of CPLR 213-a in *Matter of Hicks* is entirely logical and consistent with the process by which an IMD loft becomes rent stabilized. A loft is removed from coverage under the Loft Law and eligible for rent stabilization when a certificate of occupancy is issued legalizing the premises for residential use. (*See* Rent Stabilization Code [9 NYCRR] § 2520.11 [q].) Upon a determination of legalization, the Loft Board issues a final order setting the initial legalized rent for registration with the DHCR. (*See* Multiple Dwelling Law § 286 [3]; Rent Stabilization Code [9 NYCRR] § 2521.1 [c] ["(t)he initial legal regulated rent for a housing accommodation first made subject to the RSL and this Code pursuant to article 7-C of the Multiple Dwelling Law shall be the rent established by the Loft Board"].) Therefore, as the municipal respondent Loft Board asserts and petitioner Owner does not dispute, a determination of the initial legal rent for an IMD is conducted before the rent is registered for rent stabilization, and an IMD rent is often not examined until an owner places the tenant on notice of what the owner claims is the legal rent.

It is axiomatic, then, that the rent first registered with the DHCR, establishing the legal registered rent for future increases and starting the running of RSL's four-year statute of limitations, should be calculated by an examination of the entire rent history given the long period of time that the entire process takes. (*See Matter of Verbalis v New York State Div. of Hous. & Community Renewal*, 1 AD3d 101, 102 [1st Dept 2003] ["(t)he initial stabilized rent is . . . of crucial importance because it

establishes the base on which all subsequent lawful stabilized rents are determined"].)

As respondent Loft Board explains, the remedial nature of the Loft Law, allowing for rent adjustments favoring either tenant or owner, is best served when the complete rental history of an IMD is examined by the Loft Board prior to its registration for rent stabilization. To hold otherwise would permit an owner to legalize an illegal rent merely by perpetrating a wrongful increase beyond the four-year period under the Loft Law, and then establishing it as the initial legal rent upon registration for rent stabilization with the DHCR. (*See Thornton v Baron*, 5 NY3d 175, 181 [2005] [considering that "a landlord whose fraud remains undetected for four years—however willful or egregious the violation—would, simply by virtue of having filed a registration statement, transform an illegal rent into a lawful assessment that would form the basis for all future rent increases"].)

The Owner's reliance on *Mozes v Shanaman* (21 AD3d 854 [1st Dept 2005], *lv denied* 6 NY3d 715 [2006]) and *Matter of Brinckerhoff v New York State Div. of Hous. & Community Renewal* (275 AD2d 622 [1st Dept 2000], *appeal dismissed* 96 NY2d 729 [2001], *lv denied* 96 NY2d 712 [2001]) is unavailing. *Brinckerhoff* does not stand for the proposition that CPLR 213-a applies to all administrative agency determinations. (*Matter of Hicks*, 75 AD3d at 134 [explaining that the four-year statute of limitations on rent overcharge claims is applicable to civil judicial proceedings per CPLR 213-a, and to rent stabilization administrative claims per RSL § 26-516 (a) (2)].) *Mozes*, which relied upon a broad construction of CPLR 213-a, was essentially rejected by *Matter of Hicks*, which determined that the term "residential rent overcharge" applies only to rent-stabilized residences. (*Matter of Hicks*, 75 AD3d at 131.) Therefore, as the Loft Board and Thornley correctly assert, *Sori-Goalya Realty* remains the controlling case law regarding overcharge claims for IMD rents regulated by the Loft Board.

In an article 78 proceeding, the reviewing court must uphold an agency's decision unless the determination was irrational and unreasonable. (*Matter of Bear v New York City Loft Bd.*, 202 AD2d 260, 260 [1st Dept 1994]; *Matter of Chi Jung Chiang v Loft Bd. of City of N.Y.*, 198 AD2d 181, 182 [1st Dept 1993], *lv denied* 83 NY2d 751 [1994].) The Loft Board's determination of IMD coverage, review of the complete rental history, and assessment of rent overcharges were not irrational or unreasonable.

Accordingly, the judgment of the Supreme Court, New York County (Edward H. Lehner, J.), entered December 30, 2008, an-

nulling as time-barred the Loft Board's determination of overcharge, should be reversed, on the law, without costs, the Loft Board's findings confirmed, and the petition dismissed, and the order of the same court and Justice, entered on or about August 21, 2009, which, upon reargument, inter alia, found that the subject unit had not been deregulated from coverage, should be affirmed, without costs.

ANDRIAS, J.P., SAXE, SWEENY and NARDELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered December 30, 2008, reversed, on the law, without costs, the Loft Board's findings confirmed, and the petition dismissed, and the order, same court, entered on or about August 21, 2009, affirmed, without costs.

[Next page is 401.]