Matter of Dom Ben Realty Corp. v New York City Loft Bd. (2019 NY Slip Op 08188)





Matter of Dom Ben Realty Corp. v New York City Loft Bd.


2019 NY Slip Op 08188


Decided on November 13, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 13, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

SHERI S. ROMAN, J.P.
SYLVIA O. HINDS-RADIX
JOSEPH J. MALTESE
HECTOR D. LASALLE, JJ.


2016-04682
2016-10140
 (Index No. 12548/15)

[*1]In the Matter of Dom Ben Realty Corp., petitioner-respondent,
v
New York City Loft Board, respondent-appellant, Melissa Gundlach, et al., respondents, Babak Sadeghi, et al., respondents-respondents.


Georgia M. Pestana, Acting Corporation Counsel, New York, NY (Scott Shorr and Diana Lawless of counsel), for respondent-appellant.
Belkin Burden Wenig & Goldman, LLP, New York, NY (Sherwin Belkin, Joseph Burden, Magda L. Cruz, and Orie Shapiro of counsel), for petitioner-respondent.
Goodfarb & Sandercock, LLP, New York, NY (Margaret B. Sandercock of counsel), for respondents-respondents Bailin Brandt and Howard Chambers.



DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to review New York City Loft Board Order No. 4416, dated July 16, 2015, which denied reconsideration of New York City Loft Board Order No. 4362, dated February 12, 2015, the New York City Loft Board appeals from (1) an order of the Supreme Court, Kings County (Francois A. Rivera, J.), dated March 18, 2016, and (2) a judgment of the same court entered June 23, 2016. The order granted the petition and annulled New York City Loft Board Order Nos. 4416 and 4362. The judgment, upon the order, annulled New York City Loft Board Order Nos. 4416 and 4362.
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment is modified, on the law, (1) by deleting the provision thereof, in effect, annulling those portions of New York City Loft Board Order Nos. 4416 and 4362 which rejected the tenants' proposed withdrawal of their coverage applications as against public policy and remitted the coverage applications to the Office of Administrative Trials and Hearings, and substituting therefor a provision confirming those portions of Loft Board Order Nos. 4416 and 4362, and (2) by deleting the provision thereof, in effect, annulling those portions of New York City Loft Board Order Nos. 4416 and 4362, which found that the portions of the settlement agreement which required the tenants to withdraw their coverage applications were unenforceable, and substituting therefor a provision confirming those portions of Loft Board Order Nos. 4416 and 4362; as so modified, the judgment is affirmed, and the order is modified accordingly; and it is further,
ORDERED that the respondent-appellant is awarded one bill of costs, payable by the petitioner-respondent and respondents-respondents appearing separately and filing separate briefs.
The petitioner-respondent, Dom Ben Realty Corp. (hereinafter the owner), is the owner of a building located at 135 Plymouth Street in Brooklyn (hereinafter the building). The owner was operating a paper waste disposal plant on the first floor of the building. The respondents-respondents are residential tenants in the building (hereinafter the tenants). Starting in or around March 2014, the tenants, among others, filed separate applications for coverage under article 7-C of the Multiple Dwelling Law with the respondent-appellant, New York City Loft Board (hereinafter the Loft Board). The owner opposed the applications, contending that this hazardous operation was incompatible with residential use. Subsequently, the tenants, represented by several law firms, negotiated a settlement agreement with the owner, which, inter alia, purported to permit the tenants to remain in the building as rent stabilized tenants in the absence of a residential certificate of occupancy. Pursuant to the settlement agreement, the owner agreed to and did shut down the paper waste disposal plant. The owner also agreed to immediately grant numerous other concessions to the tenants, including immediately registering all of the apartments with the New York State Division of Housing and Community Renewal (hereinafter DHCR) to obtain immediate rent stabilization status, which otherwise would have occurred once the tenants were granted Loft Law coverage. Virtually all of the concessions granted by the owner to the tenants would be required to obtain a certificate of occupancy and convert the property into rent stabilized residences. Thereafter, the tenants sought to withdraw their coverage applications with prejudice and made such requests to the Loft Board.
In Order No. 4362, dated February 12, 2015, the Loft Board rejected the tenants' proposed withdrawal of their coverage applications on the basis that their continued residency in the building in the absence of a residential certificate of occupancy was illegal and against public policy. The Loft Board remitted the coverage applications to the Office of Administrative Trials and Hearings (hereinafter OATH) for adjudication. The owner sought reconsideration of the Loft Board's determination, and the Loft Board denied the owner's application in Order No. 4416, dated July 16, 2015.
Thereafter, the owner commenced this proceeding pursuant to CPLR article 78, seeking to annul the Loft Board's orders. In an order dated March 18, 2016, the Supreme Court granted the owner's petition and annulled the two Loft Board orders at issue, finding that the Loft Board's determination was without a rational basis and was arbitrary and capricious. On June 23, 2016, the Supreme Court entered a judgment annulling the Loft Board's orders.
The appeal from the order must be dismissed because there is no appeal as of right from an intermediate order in a proceeding pursuant to CPLR article 78 (see CPLR 5701[b][1]) and any possibility of direct appeal therefrom terminated with the entry of the judgment in the proceeding (see Matter of Aho, 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]).
In an article 78 proceeding, the reviewing court must uphold an agency's decision unless the determination was made in violation of lawful procedure, was affected by an error of law, constituted an abuse of discretion, or was arbitrary and capricious (see CPLR 7803[3]; Matter of Scott v Village of Nyack Hous. Auth., 147 AD3d 957, 958). " An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts'" (Matter of Scott v Village of Nyack Hous. Auth., 147 AD3d at 958, quoting Matter of Peckham v Calogero, 12 NY3d 424, 431). "While judicial review must be meaningful, the courts may not substitute their judgment for that of the agency for it is not their role to weigh the desirability of any action or [to] choose among alternatives" (Akpan v Koch, 75 NY2d 561, 570 [internal quotation marks omitted]; see Matter of Cohen v State of New York, 2 AD3d 522, 525).
Section 301 of the Multiple Dwelling Law prohibits the occupancy of a multiple dwelling in whole or in part until the issuance of a residential certificate of occupancy (see Multiple Dwelling Law § 301; Chazon, LLC v Maugenest, 19 NY3d 410, 413). The Loft Law (Multiple Dwelling Law art 7-C) provides an exception thereto by permitting residential use in interim multiple dwellings prior to the issuance of a residential certificate of occupancy (see Multiple Dwelling Law § 283). "Until the Legislature enacted the Loft Law . . . the residential occupancy of lofts was illegal [*2]pure and simple: The tenants had no right to be there, and the landlords had no right to collect rent" (Chazon, LLC v Maugenest, 19 NY3d at 413).
The Loft Law is designed to integrate "uncertain and unregulated residential units, converted from commercial use, into the rent stabilization system in a manner which ensures compliance with the Multiple Dwelling Law and various building codes" (Blackgold Realty Corp. v Milne, 119 AD2d 512, 515, affd 69 NY2d 719). The Loft Law was created to regulate the conversion of industrial, manufacturing, and commercial space into residential space. It enables an owner to rent space in a building while the structure is undergoing conversion pursuant to building department, fire department, and other regulatory requirements necessary to obtain a certificate of occupancy for a residential building. The work necessary to legalize a building for residential use is subject to specifically prescribed time periods (see Multiple Dwelling Law § 284[1]), and the Loft Board is specifically charged with determining interim multiple dwelling status and other issues of coverage, including coverage applications (see Multiple Dwelling Law § 282).
Here, the Supreme Court should have confirmed the Loft Board's determination rejecting the tenants' proposed withdrawal of their coverage applications and remitting the coverage applications to the OATH for adjudication. Contrary to the tenants' contentions, the Loft Board had jurisdiction over the coverage applications (see Multiple Dwelling Law § 282), and the coverage applications did not become moot upon the tenants' proposed withdrawal with prejudice of the applications. Title 29 of the Rules of the City of New York provides that the Loft Board may review settlement agreements and exercise discretion to reject a proposed settlement and remit matters for further investigation and adjudication (see NY City Loft Board Regulations [29 RCNY] § 1-06[j][5]). There is nothing in that rule that limits the Loft Board's review of settlement agreements or its authority to re-open and remit a coverage application.
Additionally, under the particular circumstances of this matter, registration of the building and the units at issue with the DHCR was insufficient to warrant dismissal of the coverage applications. The Loft Law provides the sole means by which the tenants could legally reside in the building before the owner obtains a residential certificate of occupancy (see generally Chazon, LLC v Maugenest, 19 NY3d at 413). Notably, there is no impediment to the Loft Law and the Rent Stabilization Law applying simultaneously (see Blackgold Realty Corp. v Milne, 119 AD2d at 516).
The Loft Board rationally rejected the tenants' proposed withdrawal of their coverage applications on the basis that those portions of the settlement agreement which required the tenants to withdraw their coverage applications violated the Loft Law and were against public policy. The settlement agreement purported to perpetuate an illegality, because the tenants would remain in the building without Loft Law coverage in contravention of Multiple Dwelling Law § 301. The tenants' proposed withdrawal had the effect of waiving their Loft Law coverage claims and perpetuating an illegal occupancy with the inherent risks to the general public that the Loft Law was designed to address. Moreover, the Loft Law "is a governmental residential regulatory scheme that is not subject to waiver by the tenant" (Matter of Nur Ashki Jerrahi Community v New York City Loft Bd., 80 AD3d 323, 327). "[W]hen a right has been created for the betterment or protection of society as a whole, an individual is incapable of waiving that right; it is not [hers or] his to waive" (159 MP Corp. v Redbridge Bedford, LLC, 160 AD3d 176, 203, affd 33 NY3d 353 [internal quotation marks and emphasis omitted]), irrespective of the benefits conferred by a private agreement upon the parties thereto (see 390 W. End Assoc. v Harel, 298 AD2d 11).
However, the Loft Board's finding that the settlement agreement in its entirety was unenforceable was without a rational basis and was arbitrary and capricious. Under the facts of this case and in light of the strong policy favoring the enforcement of settlement agreements, the Loft Board should have deemed only those provisions of the settlement agreement that required the tenants to withdraw their coverage applications to be unenforceable. "Stipulations of settlement are favored by the courts and not lightly cast aside" (Hallock v State of New York, 64 NY2d 224, 230). "Moreover, parties seeking to set aside such a stipulation will be granted such relief only upon a showing of good cause sufficient to invalidate a contract, such as fraud, overreaching, duress, or mistake" (Macaluso v Macaluso, 62 AD3d 963, 963). Additionally, the settlement agreement contains a severability clause, such that "in the event that any term or condition of this Agreement [*3]is determined to be void or unenforceable, the remainder of the Agreement shall remain in full force and effect." Therefore, deeming the agreement unenforceable in its entirety did not reflect the intent of the parties.
Accordingly, the Supreme Court should have (1) confirmed the Loft Board's determination rejecting the tenants' proposed withdrawal of their coverage applications as against public policy and remitting the coverage applications to the OATH for adjudication, (2) confirmed the Loft Board's determination that the portions of the settlement agreement which required the tenants to withdraw their coverage applications were unenforceable, and (3) annulled so much of the Loft Board's determination as deemed unenforceable the remaining portions of the settlement agreement.
ROMAN, J.P., HINDS-RADIX, MALTESE and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court