49 Bleecker, Inc., Petitioner-Landlord-Respondent,
against
Jen Gatien and Deerjen, LLC, Respondents-Tenants-Appellants.



Tenants appeal from two orders of the Civil Court of the City of New York, New York County (Brenda S. Spears, J.), each entered March 14, 2014, which, respectively, denied their cross motion for summary judgment dismissing the petition and granted petitioner-landlord's motion for leave to conduct discovery in a nonpayment summary proceeding.




Per Curiam.
Orders (Brenda S. Spears, J.), each entered March 14, 2014, affirmed, with one bill of $10 costs.
This nonpayment summary proceeding is not susceptible to summary dismissal. Tenants, the residents of unit 306 at 49 Bleeker Street, failed to establish, as a matter of law, that petitioner-landlord, the net lessee of the third floor of the subject six-story building, was either the "owner of a multiple dwelling" or the "lessee of a whole dwelling" so as to be required to plead and prove registration of the building as a multiple dwelling pursuant to MDL 325 and 22 NYCRR 208.42(g) (see Eng v Roth, NYLJ, February 8, 1982, at 6, col 1 [App Term, 1st Dept]; Adair v Teich, NYLJ, November 10, 1980, at 7, col 4 [App Term, 1st Dept]; 13A Carmody-Wait 2d § 90:14 [2015]; see also Weiner v Leroco Realty Corp., 279 NY 127 [1938]).
Nor have tenants established that landlord was the "owner" of a multiple dwelling (see Caldwell v American Package Co., Inc., 57 AD3d 15, 24 [2008]; Jalinos v Ramkalup, 255 AD2d 293 [1998]), and therefore subject to MDL § 302(1)(b), which prohibits said owner from recovering rent or maintaining a nonpayment proceeding for any period the premises is occupied in violation of the certificate of occupancy. In this regard, tenants failed to proffer evidentiary proof in admissible form establishing, prima facie, that the third-floor of the subject building, the only portion of the building shown to be under landlord's control, was a "multiple dwelling" (MDL § 4[7]). Unsworn allegations, or conclusory allegations based upon information and belief are insufficient to warrant the entry of summary judgment. Although tenants tendered proof indicating that there are residential tenants on other floors of the building, the record is bereft of evidence that landlord functioned in a capacity that afforded it direct or indirect control of the building as a whole (see MDL 4[44]) or was "the legal equivalent of the owner" (Matter of Langsam Prop. Servs. Corp. v McCarthy, 261 AD2d 208, 210 [1999]; see Pekelnaya v Allyn, 25 [*2]AD3d 111 [2005]; Zebzda v Hudson St., LLC, 72 AD3d 679, 681 [2010]; Matias v Mondo Props. LLC, 43 AD3d 367, 369 [2007]; Greenpoint Bank v John, 256 AD2d 548 [1998]). The dissent's broad interpretation of the term owner of a multiple dwelling, as any "lessee" in control of a single dwelling unit, would stretch the MDL beyond its breaking point and would make every residential tenant an "owner" pursuant to the MDL.
Petitioner-landlord demonstrated "ample need" for discovery relating to the nature of tenant Gatien's occupancy of the demised premises. No prejudice will befall tenants "since it is the landlord's case which will be delayed, if at all, by the request for disclosure" (Hartsdale Realty Co. v Santos, 170 AD2d 260, 260 [1991]).
Doris Ling-Cohan (dissenting opinion): I respectfully dissent and vote to reverse and dismiss. The tenant's cross-motion for summary judgment of dismissal should be granted and the landlord's motion for leave to conduct discovery deemed moot, as petitioner is prohibited from collecting rent in this residential nonpayment proceeding, as a matter of law, pursuant to the rent forfeiture provisions of the Multiple Dwelling Law (MDL)(see MDL §§ 301 [1];[FN1]
 302 [1];[FN2]
325 [2][FN3]
; Chazon, LLC v Maugenest, 19 NY3d 410 [2012]). Notwithstanding that petitioner-landlord is a "net lessee" of one floor of the subject six-story building, petitioner-landlord is an "owner", as specifically defined by the plain language of MDL § 4 (44) and, thus, precluded from collecting rent, as there is no dispute that the subject building is a multiple dwelling,[FN4]
lacking a valid certificate of occupancy for residential use and a multiple dwelling registration (see MDL §§ 302 [1] [b]; 325 [2]).
Legislature Clearly Defined "Owner" to Include "Lessee"
The MDL is abundantly clear that an "owner" is precluded from recovering rent from a tenant of a multiple dwelling, if the building has no certificate of occupancy or is not registered as a multiple dwelling (see MDL §§ 302 [1] [b]; 325 [2]). Notably, the term "owner" is explicitly defined by the legislature in a statute entitled "Definitions" (MDL § 4), to include "lessees" such as petitioner. "[I]t is well-established...that the legislature may, in enacting a law, [*3]define the terms used therein or declare what construction shall be placed on its own language, and such legislative interpretations will not be lightly disregarded" (McKinney's Cons Laws of NY, Book 1, Statutes § 75, Comment at 160 [1971 ed] [footnotes omitted]).

Here, the legislature did just that, in exercising its prerogative by enacting a "Definitions" section, defining "owner" by explicitly using the word "lessee", in the list of entities to be considered as an "owner", for MDL purposes.[FN5]
Thus, contrary to the majority's opinion, petitioner, as a "lessee", is clearly an "owner", as defined by the legislature in MDL § 4 (44), for purposes of the MDL, as a matter of law.

Moreover, petitioner further qualifies under the statute as an "owner", pursuant to the separately listed category contained in the legislature's definition section, under "any other person...directly or indirectly in control of a dwelling" (MDL § 4 [44]). Petitioner qualifies even though the word "dwelling" is used because such word is defined as "any building or structure or portion thereofwhich is occupied in whole or in part as the home, residence or sleeping place of one or more human beings" (MDL § 4 [4][emphasis supplied]). Thus, such statutes (MDL§ 4 [44] and [4]), read together, indicate that "any...person...directly or indirectly in control" of even a "portion" of a residential building (i.e. a floor), is nonetheless considered to be an "owner" for purposes of the MDL. Not addressed by the majority is the undisputed fact that the ten-year lease between petitioner and the building owner makes clear that petitioner had control of the apartment in that it was required to make repairs and comply with all laws.[FN6]
Thus, petitioner, both as a "lessee" and a "person...directly or indirectly in "control" of a dwelling" (because a "dwelling" is defined as even a "portion"), is clearly an "owner", as specifically defined by the legislature (MDL § 4 [44]). As such, petitioner is precluded from recovering rent (similar to the owner of the entire building), since it is undisputed that the building is a multiple dwelling,[FN7]
[*4]lacking a certificate of occupancy for residential use [FN8]
and a multiple dwelling registration (see MDL §§ 301, 302; 325 [2]).
Ignoring the Plain Language of MDL § 4[44]
While the "results favored" by the majority "may make sense from a practical point of view", as the Court of Appeals has made abundantly clear, it cannot "be reconciled with the text of the statute" (Chazon, LLC v Maugenest, 19 NY3d at 416). Thus, it is improper to ignore the plain language of the statute to achieve the result the majority favors (see id.). Further, notwithstanding the majority's concern about a "broad interpretation of the term owner' pursuant to MDL § 4 (44)", nonetheless, "where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (see Patrolmen's Benevolent Assn. v City of New York, 41 NY2d 205, 208 [1976]).

As the Court of Appeals has "repeatedly stated, the text of a [statutory] provision is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning'"(Albany Law School v New York State Office of Mental Retardation and Developmental Disabilities, 19 NY3d 106 [2012][citations omitted]). "The function of the courts is to enforce statutes, not to usurp the power of legislation, and to interpret a statute where there is no need for interpretation" (McKinney's Cons Laws of NY, Book 1, Statutes § 76, Comment at 168 [1971 ed] [footnotes omitted]). In fact, section 76 of McKinney's Statutes, entitled "[s]tatutes too clear for construction", specifically provides that: "to conjecture about or to add to or to subtract from words having a definite meaning, or to engraft exceptions where none exist are trespasses by a court upon the legislative domain" (McKinney's Cons Laws of NY, Book 1, Statutes § 76, Comment at 168 [1971 ed] [footnotes omitted]).

The word "lessee" is precisely one of those words which is "free from ambiguity and express[es] plainly, clearly and distinctly the legislative intent" (McKinney's Cons Laws of NY, Book 1, Statutes § 76 [1971 ed]). In fact, "lessee" is used daily in landlord-tenant court without any confusion and need for the court to substitute its own meaning, as the majority has done here.

Consequently, it is inappropriate for the majority not to give effect to an unambiguous and plainly written definitional statute, and to narrow the use of the term "lessee". The majority's [*5]expressed concern that a "broad interpretation of the term owner' pursuant to MDL § 4 (44)...would stretch the MDL beyond its breaking point" and would, thus, make a residential tenant an "owner", is entirely misplaced because the core issue here is merely whether the rent forfeiture provisions of MDL §§ 301 (1), 302 (1), 325 (2), applicable to "owners" not in compliance with the MDL, should be applied to a commercial lessor leasing a residential premises, such as petitioner, and it would never be the situation that a residential tenant would try to collect rent from him or herself.

Further, the majority, in citing to Weiner v. Leroco Rlty Corp., entirely ignores the Court of Appeals' cautionary language contained therein, which is particularly applicable here: 

It may be that the lessee...as well as the owner is bound to keep the premises in repair. However...the owner does not escape liability by making a lease. By leasing the premises to some irresponsible person, owners could very readily shift the burden and nullify the purposes of the laws

(Weiner v. Leroco Rlty Corp., 279 NY at 130 [emphasis supplied]). The majority, by, in essence, exempting a lessee, who is plainly defined by the legislature as an "owner" under MDL §4 (44), has permitted the owner of the subject building to "shift the burden and nullify the purposes of the law", a practice frowned upon by the Court of Appeals (id.). The other cases cited by the majority to limit the definition of "owner" are also inapplicable in that they do not deal with the term at issue here ("lessee") and, therefore, do not provide relevant precedent.[FN9]
Contravention of the "Public Interest" (MDL § 2) and Chazon
Moreover, construing the term "owner" narrowly, as the majority has chosen to do, and, thus, creating an opportunity for landlords to indirectly collect rent from tenants in buildings that are unsafe for human habitation, is not only contrary to the plain meaning of the relevant portions of the MDL, but also to the legislature's articulated "legislative finding" to protect the "public interest", contained in MDL § 2.[FN10]
Under the majority's holding, landlords can now easily avoid [*6]compliance with the multiple dwelling law (by simply leasing portions of buildings to lessees so that lessees collect rent on non-compliant dwellings even when the lessee, or the building owner, is not in compliance with the Loft Law), and thereby, removing any incentive to bring those buildings into conformity with the basic safety requirements provided for in the housing code (see MDL § 2; Chazon, LLC v Maugenest, 19 NY3d 410, 414 [2012]; Light Re LLC v Frank, NYLJ, May 10, 2013 [Civ Court, Kings County]).

Ignored by the majority, but, nonetheless, made explicitly clear by the Court of Appeals in Chazon, LLC v Maugenest:

In the absence of compliance, the law's command is quite clear...[n]o rent shall be recovered by the owner...and no action or special proceeding shall be maintained...or for possession of said premises for nonpayment of rent. Those are the words of Multiple Dwelling Law § 302 (1) (b), and Multiple Dwelling Law § 285 (1) makes an exception only for a landlord who is "in compliance with" the Loft Law. 

(Chazon, 19 NY3d at 415). While the results favored by the majority may arguably make sense "from a practical point of view" (id. at 416), nevertheless, as the Court of Appeals expressly stated in rejecting several appellate courts' attempts to avoid the applicability of the rent forfeiture provisions of the MDL:

"[w]e find nothing in the opinions endorsing such results...to explain how they can be reconciled with the text of the statutes. They simply cannot. Multiple Dwelling Law § 302 (1) (b) bars not only an action to recover rent, but also an action or special proceeding...for possession of said premises for nonpayment of such rent'...If this is an undesirable result the problem is to be addressed by the legislature".

(id. at 416). Other Grounds for Dismissal
Additionally, the lower court erred in finding, in its mere two-sentence order, that there are issues of fact as "to the circumstances surrounding [tenant's] occupancy of the underlying premises", as there can be no dispute that the tenant is using the subject premises for residential purposes, given that petitioner admitted, and in fact pled, in its verified petition, that the subject premises was "rented for residential purposes", and acknowledged that the subject premises "was converted to residential use after June 21, 1981 or later" (¶¶4, 8, Petition). Moreover, significantly, petitioner chose to commence this case as a residential nonpayment proceeding, in the residential housing portion of the Civil Court of the City of New York,[FN11]
and the verified petition is labeled "Non-Payment of Rent Residential" (Petition, Rec. at 16 [emphasis supplied]). Further warranting dismissal, as argued by the tenant in her cross-motion, is that the [*7]verified petition is defective because it fails to allege either that (1) the premises is not a multiple dwelling or (2) that the premises is a multiple dwelling and there is a currently effective registration statement on file, with the multiple dwelling registration number (see 22 NYCRR § 208.42 [g]; MDL § §4 [7]; 325 [2]; Administrative Code of City of New York § 27-2107(b); Mandel v Pitkowsky, 102 Misc 2d 478 [App Term, 1st Dept 1979]).

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

I concurI concurI concur

Decision Date: June 09, 2016



Footnotes

Footnote 1:MDL § 301 (1) provides, in relevant part, that "[no] multiple dwelling shall be occupied in whole or in part until the issuance" of a certificate of occupancy.

Footnote 2:MDL § 302 (1) provides, in relevant part, as follows: "a. If any dwelling or structure be occupied in whole or in part for human habitation in violation of section three hundred one, during such unlawful occupation...b. No rent shall be recovered by the owner of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent".

Footnote 3:MDL § 325 (2) "requires the registration of owners of multiple dwellings and...prescribes penalties [that]...no rent shall be recovered by the owner of a multiple dwelling who fails to comply with such registration requirements...".

Footnote 4:MDL § 4 (7) defines "multiple dwelling" as a building that "is occupied as the residence or home of three or more families living independently of each other".

Footnote 5:In fact, the plain and unambiguous language of MDL § 4 (44) defines "owner", to specifically include "lessee", as follows: "the owner or owners of the freehold of the premises or lesser estate therein, a mortgagee or vendee in possession, assignee of rents, receiver, executor, trustee, lessee, agent, or any other person...directly or indirectly in control of a dwelling" (emphasis supplied).

Footnote 6:Pursuant to the explicit terms of the ten-year lease between petitioner and the building owner, petitioner (as the lessee of the entire third floor of the subject building) has control of the subject premises, given that it was contractually obligated "to make all repairs and replacements in and to the [d]emised [p]remises", bringing petitioner within the definition of "owner", as per MDL § 4 (44) (Notice of Motion, Exh. C at 13, ¶7.1). Other examples of petitioner's "control" include that the lease also obligates petitioner-landlord to "comply with all laws and requirements of public authorities...with respect to the [d]emised [p]remises" and "[a]ll work necessary to correct any...violation shall be undertaken and completed by [petitioner herein] at its sole cost and expense..." (Notice of Motion, Exh. C at 33, ¶23.1).

Footnote 7:Petitioner admits that the subject building is an unregistered multiple dwelling (¶6, Reply Affirmation) and in fact, submitted to the lower court, a computer printout from HPD listing the subject building as containing eight "class A" units (a "class A multiple dwelling" is "a multiple dwelling which is occupied for permanent residence purposes" [MDL §4 (8) (a)]), and indicates that the building is "not currently validly registered with HPD" (Reply Affirmation, Exh. H). Petitioner also does not dispute tenant's assertions that the subject building consists of approximately 25 or more residential units and fails to refute the two (2) affidavits supplied by tenant from two (2) other residents of the subject building, each attesting to knowledge of at least twenty (20) other residential units in the building.

Footnote 8:Petitioner admits that the subject building lacks a certificate of occupancy for residential purposes, as the lease attached to its papers, executed between petitioner-landlord/net lessee and the building's owner, specifically acknowledges that the building lacks a certificate of occupancy (Notice of Cross-Motion for Summary Judgment, Exh. C, Article 5.1). Also, tenant has supplied a copy of a temporary certificate of occupancy, issued by the Department of Buildings, for the first floor and cellar of the subject building, which fails to permit residential use anywhere in the building; such exhibit is unrefuted (Notice of Cross-Motion, Exh. M).

Footnote 9:As to this issue, the majority cites to the following inapplicable cases: Greenpoint Bank v John, 256 AD2d 548 (2nd Dept 1998)("mortgagee not in possession of real property" is not an owner, since MDL § 4 [44] specifically only includes "mortgagee...in possession"); Matter of Langsam Prop. Servs. Corp. v McCarthy, 261 AD2d 208 (1st Dept 1999)(issue as to service of notices of violation upon the employee of managing agent held valid, since equivalent to service upon employee of owner); Zebzda v Hudson St., LLC, 72 AD3d 679 (2d Dept 2010)(dismissal of personal injury action reversed since unclear the extent to which defendant maintained control over the building during its conversion from commercial space into a condominium]; and Matias v Mondo Props. LLC, 43 AD3d 367 (1st Dept 2007)(individual liability for personal injuries, to an officer and shareholder of limited liability corporation denied since premises not declared a public nuisance).

Footnote 10:MDL § 2 entitled "Legislative finding" provides as follows:
~~"It is hereby declared that intensive occupation of multiple dwelling sites...inadequate provision for light and air, and insufficient protection against the defective provision for escape from fire, and improper sanitation...are a menace to the health, safety, morals, welfare, and reasonable comfort of the citizens of the state; and that the establishment and maintenance of proper housing standards...are essential to the public welfare. Therefore the provisions [are]...enacted and their necessity in the public interest is hereby declared as a matter of legislative determination". 

Footnote 11:Notably, petitioner could have commenced this case as a commercial non-payment proceeding, in the Commercial Part of the Civil Court, however, instead, petitioner admits and has pled that the subject premises was leased for residential purposes.