*317 OPINION OF THE COURT
Per Curiam.
Order entered December 23,1987 affirmed, with $10 costs.
The issue is whether compliance with Multiple Dwelling Law § 284 (1) must be pleaded and proven in order to successfully maintain a nonpayment proceeding against an occupant of an interim multiple dwelling. We hold that it must.
This nonpayment summary proceeding was brought upon a petition which alleges the status of the building premises as an "interim multiple dwelling” under article 7-C of the Multiple Dwelling Law. The premises were originally registered with the Loft Board in November 1983.
While the owner of an interim multiple dwelling may recover rent from residential loft occupants notwithstanding the rent-forfeiture provisions of the Multiple Dwelling Law applicable to owners of dwellings occupied without a certificate of occupancy, this right is contingent upon the loft building owner’s "compliance” with Multiple Dwelling Law § 284 (see, Multiple Dwelling Law § 285 [1]). One of the primary "owner obligations” under section 284 is the filing and/ or obtaining of appropriate alteration applications and permits, and the taking of "all reasonable and necessary action” to obtain a certificate of occupancy within 36 months from June 21, 1982, the effective date of the Loft Law (Multiple Dwelling Law § 284 [1] [i]). The petition does not allege the requisite compliance with the Loft Law’s owner obligations and is jurisdictionally defective (see, Matter of Blackgold Realty Corp. v Milne, 69 NY2d 719). Moreover, it is undisputed that the owner has not complied with the time requirements of section 284. There is no showing that the owner has taken any steps to bring the subject premises into compliance.
The owner’s argument that mere registration of the building as an interim multiple dwelling entitles it to collect rent misperceives the goal underlying the statutory scheme. The Loft Law permits actions for rent in the absence of a residential certificate of occupancy but the owner is required to move forward on his plans to legalize the premises within the time periods specified in the statute. The law does not contemplate a situation where owners will be permitted to collect rent while the building languishes indefinitely as an "interim” multiple dwelling. At some point — and the statute expressly defines the time period — an "interim” multiple dwelling must be upgraded to a class A multiple dwelling. To the extent an *318 owner requires extensions of the time to comply, or to the extent the cost of compliance renders legal residential conversion infeasible, an owner is authorized to apply to the Loft Board for relief (Multiple Dwelling Law § 284 [1] [i]; § 285 [2]).
We appreciate that this is not an isolated case and that the dynamics of loft conversion are such that there are many dwellings which have not been legalized in conformity with the time schedule originally set by the Legislature. Any claimed inequities should be addressed to the Legislature. This court is charged with enforcing the statute as written. The language of the statute setting forth a timetable is clear and unequivocal and not subject to judicial interpretation.
Accordingly, inasmuch as the owner has failed to allege or demonstrate compliance with Multiple Dwelling Law § 284 (1), a nonpayment summary proceeding may not be maintained and the petition was properly dismissed by the Civil Court.