[971 NE2d 852, 948 NYS2d 571]

Chazon, LLC, Respondent, v Margaret Maugenest, Appellant, et al., Defendants.

Argued May 1, 2012; decided June 7, 2012

## POINTS OF COUNSEL

*Goodfarb & Sandercock, LLP*, New York City (*Margaret B. Sandercock* of counsel), for appellant. I. A Loft Law landlord can only collect rent when in compliance with Multiple Dwelling Law § 284. II. A Loft Law landlord who is not in compliance with section 284 is barred by Multiple Dwelling Law § 285 (1) from bringing an action in ejectment due to nonpayment of rent. (*99 Commercial St. v Llewellyn*, 240 AD2d 481; *County Dollar Corp. v Douglas*, 160 AD2d 537; *902 Assoc. v Total Picture Creative Servs.*, 144 Misc 2d 316.) III. A Loft Law tenant whose landlord does not meet statutory fire and safety standards should be permitted to withhold rent as a means of encouraging the landlord to meet its obligations. (*Matter of Bikman v New York City Loft Bd.*, 14 NY3d 377; *Caldwell v American Package Co., Inc.*, 57 AD3d 15.) IV. The courts below erred in failing to address appellant's ability to pay rent and cure her alleged default. (*Iltit Assoc. v Sterner*, 63 AD2d 600; *Young v Lucas*, 1 AD2d 754; *Clark v Williams*, 149 Misc 2d 945; *County Dollar Corp. v Douglas*, 160 AD2d 537; *99 Commercial St. v*

*Llewellyn*, 240 AD2d 481; *Baer v Gotham Craftsman*, 154 Misc 2d 490; *Park W. Mgt. Corp. v Mitchell*, 47 NY2d 316.)

*Tenenbaum Berger & Shivers LLP*, Brooklyn (*David M. Berger* of counsel), for respondent. I. A tenant may not both abstain from paying rent and demand continued occupancy. The statute never abrogated the common-law right to recover possession. (*Goho Equities v Weiss*, 149 Misc 2d 628; *Wokal v Sequin*, 167 Misc 463; *Caldwell v American Package Co., Inc.*, 57 AD3d 15; *99 Commercial St. v Llewellyn*, 240 AD2d 481; *Jordan Mfg. Corp. v Zimmerman*, 169 AD2d 815; *Le Sannom Bldg. Corp. v Lassen*, 173 AD2d 249; *Carnegie Hall, Inc. v Zysman*, 238 App Div 515; *J.Z. & A.E. Realty Corp. v Putnam*, 258 AD2d 442; *Dulac v Dabrowski*, 4 AD3d 308; *1018 Dev. Co. v Howard*, 1 Misc 3d 128[A], 2003 NY Slip Op 51567[U].) II. There is no split between the First and Second Departments. (*County Dollar Corp. v Douglas*, 160 AD2d 537; *902 Assoc. v Total Picture Creative Servs.*, 144 Misc 2d 316; *Le Sannom Bldg. Corp. v Lassen*, 173 AD2d 249; *Cromwell v Le Sannom Bldg. Corp.*, 171 AD2d 458.) III. There is no right to an offset under the warranty of habitability. (*Cromwell v Le Sannom Bldg. Corp.*, 171 AD2d 458.)

*Robert Petrucci*, New York City, for Lower Manhattan Loft Tenants, amicus curiae. I. The court below erred in allowing Chazon, LLC to maintain an action for possession based on nonpayment of rent. (*Caldwell v American Package Co., Inc.*, 57 AD3d 15; *B.S.L. One Owners Corp. v Rubenstein*, 159 Misc 2d 903; *BFN Realty Assoc. v Cora*, 8 Misc 3d 139[A], 2005 NY Slip Op 51338[U]; *40 Clinton St. Assoc. v Dolgin*, 126 Misc 2d 373; *468-470 Ninth Ave. Corp. v Randall*, 199 AD2d 13; *Hornfeld v Gaare*, 130 AD2d 398; *99 Commercial St. v Llewellyn*, 240 AD2d 481; *Jo-Fra Props., Inc. v Bobbe*, 81 AD3d 29, 17 NY3d 933; *640 Broadway Renaissance Co. v Eisner*, 212 AD2d 376; *County Dollar Corp. v Douglas*, 161 AD2d 370.) II. The Second Department is unique in its incorrect holding that a noncompliant landlord of an interim multiple dwelling can eject a Loft-Law-protected tenant for nonpayment of rent. (*Jo-Fra Props., Inc. v Bobbe*, 81 AD3d 29; *Le Sannom Bldg. Corp. v Lassen*, 173 AD2d 249; *Cromwell v Le Sannom Bldg. Corp.*, 171 AD2d 458, 222 AD2d 307; *99 Commercial St. v Llewellyn*, 240 AD2d 481; *Nestor v McDowell*, 81 NY2d 410; *Killington Invs. v Leino*, 148 AD2d 334.)

**OPINION OF THE COURT**

SMITH, J.

 We hold that the landlord of a New York City loft who has not complied with the Loft Law and has not received an extension of time to comply may not maintain an ejectment action based on nonpayment of rent.

Plaintiff is the owner of a loft building in Brooklyn. Defendant-appellant occupies an apartment in that building, for which she has paid no rent since 2003. Plaintiff brought this action in ejectment; Supreme Court granted summary judgment awarding plaintiff possession of the apartment, and the Appellate Division affirmed (81 AD3d 769 [2011]). We granted permission to appeal (17 NY3d 705 [2011]), and now reverse. We conclude that, under the present circumstances, the landlord is not entitled either to collect rent or to evict the tenant. To explain why, we must summarize the historical background and the content of the relevant statutes.

The apartments commonly referred to as "lofts" are in buildings formerly used for commercial purposes—often former factories—that have been rented to residential tenants. Because the buildings do not have a residential certificate of occupancy, this use of the property is contrary to Multiple Dwelling Law § 301 (1), which says that, with exceptions not relevant here, "[n]o multiple dwelling shall be occupied in whole or in part until the issuance" of such a certificate. Section 302 (1) of the Multiple Dwelling Law says:

> "a. If any dwelling or structure be occupied in whole or in part for human habitation in violation of section three hundred one, during such unlawful occupation . . .

> "b. No rent shall be recovered by the owner of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent."

Until the Legislature enacted the Loft Law (Multiple Dwelling Law art 7-C) in 1982 (L 1982, ch 349), the residential occupancy of lofts was illegal pure and simple: The tenants had no right to be there, and the landlords had no right to collect rent. Such illegal occupancies were common in New York City, and the Legislature enacted the Loft Law as a means of bringing them within the law.

The Loft Law defines the term "interim multiple dwelling" to mean, essentially, any of these illegally occupied buildings (Multiple Dwelling Law § 281). It establishes a series of deadlines by which the owners of interim multiple dwellings are required to alter them to conform to safety and fire protection standards, ultimately doing everything necessary to obtain a residential certificate of occupancy (Multiple Dwelling Law § 284 [1]). A landlord unable to meet the deadlines "for reasons beyond his/her control" is entitled to an extension of time if that landlord demonstrates to the Loft Board (an agency established by Multiple Dwelling Law § 282) that he or she "has made good faith efforts" to comply (Multiple Dwelling Law § 284 [1] [vii]). Until the certificate of occupancy is obtained, the rents in interim multiple dwellings are regulated, and the tenants are protected against eviction (Multiple Dwelling Law § 286), while the landlords, as long as they are in compliance with the Loft Law, are relieved from the prohibition against collecting rent or seeking eviction for nonpayment. Section 285 (1) of the Multiple Dwelling Law says: "Notwithstanding the provisions of section three hundred two . . . of this chapter, the owner of an interim multiple dwelling may recover rent payable . . . and maintain an action or proceeding for possession of such premises for non-payment of rent, provided that he is in compliance with this article."

As an effort to bring loft buildings into compliance with the law, the Loft Law has been less than a complete success. The deadlines for compliance have been extended several times (see Multiple Dwelling Law § 284 [1] [ii]-[v]). In 1983, there were 914 buildings under the Loft Board's jurisdiction (Lebovits and Rzesniowiecki, *The New York Loft Law*, 38 NY Real Prop LJ [No. 2] 21, 28 n 28 [spring 2010]). By 1989, when the law had been in effect seven years, Justice Ostrau of the Appellate Term, dissenting in *902 Assoc. v Total Picture Creative Servs.* (144 Misc 2d 316, 320 [App Term, 1st Dept 1989]), said that "[v]ery few interim multiple dwellings in this city have been legalized." Even now, when the law has been in effect for 30 years, there are, according to the Loft Board's Web site, 304 buildings—almost one-third of the 1983 total—that remain as "interim multiple dwellings" (http://www.nyc.gov/html/loft/html/buildings/buildings.shtml [last visited May 30, 2012]). The reason for the slow pace of legalization is not clear—predictably, tenants blame landlords, while landlords blame tenants and the Loft Board—but it appears to present a significant practical problem.

The problem is illustrated by this case, in which the landlord remains out of compliance with the Loft Law and the tenant has paid no rent for nine years. The landlord has neither met the Loft Law deadlines nor obtained an extension of time from the Loft Board. (Indeed, in 2006 the Loft Board specifically rejected the landlord's claim that compliance was hindered by circumstances beyond its control.) In the absence of compliance, the law's command is quite clear: "No rent shall be recovered by the owner of such premises . . . and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent." Those are the words of Multiple Dwelling Law § 302 (1) (b), and Multiple Dwelling Law § 285 (1) makes an exception only for a landlord who is "in compliance with" the Loft Law. In other words, the statutes leave these parties in their present stalemate until compliance has been achieved.

Several opinions from intermediate appellate courts, perhaps finding this sort of result undesirable, have concluded that it can be avoided. In *902 Associates*, the Appellate Term majority held that "compliance with Multiple Dwelling Law § 284 (1) must be pleaded and proven in order to successfully maintain a nonpayment proceeding against an occupant of an interim multiple dwelling" (144 Misc 2d at 317); but Justice Ostrau dissented, protesting that the majority "has now jeopardized the rent roll of almost every interim multiple dwelling in this city" (*id.* at 320). In *Le Sannom Bldg. Corp. v Lassen* (173 AD2d 249, 250 [1st Dept 1991]), the Appellate Division concluded, without explanation:

> "The tenants' argument that they cannot be ejected because they are protected loft tenants under Multiple Dwelling Law article 7-C is without merit. While the article protects tenants from being ejected due to the lack of a residential certificate of occupancy, it does not preclude ejectment for nonpayment of rent."

And in *99 Commercial St. v Llewellyn* (240 AD2d 481 [2d Dept 1997]), the Appellate Division sustained a claim for ejectment by the landlord of a loft building, rejecting an argument based on the absence of a residential certificate of occupancy. As in *Le Sannom*, the court in *99 Commercial* did not explain its rationale. It simply said: "Although Llewellyn's argument has merit in a summary proceeding for the nonpayment of rent, the plaintiff herein brought an ejectment proceeding. The case at

bar is an action to recover possession of real property and not to recover rent" (*id.* at 483).

The tenant here suggests that *Le Sannom* may be distinguishable from this case, because for all that appears in the opinion the landlord may have been in compliance with the Loft Law. The tenant does not attempt to distinguish *99 Commercial*, but says it was wrongly decided.

The results favored by Justice Ostrau in *902 Associates*, and reached by the Appellate Division in *Le Sannom* and *99 Commercial*—and in this case, where the Appellate Division relied on its earlier decisions—may make sense from a practical point of view. But we find nothing in the opinions endorsing such results, nothing in the arguments of the landlord here, and nothing anywhere else to explain how they can be reconciled with the text of the statute. They simply cannot. Multiple Dwelling Law § 302 (1) (b) bars not only an action to recover rent, but also an "action or special proceeding . . . for possession of said premises for nonpayment of such rent." This is such an action, and it is barred. If that is an undesirable result, the problem is one to be addressed by the Legislature.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order reversed, etc.