663 Madison Ice, LLC v Jansen (2025 NY Slip Op 51545(U))

[*1]

663 Madison Ice, LLC v Jansen

2025 NY Slip Op 51545(U)

Decided on September 30, 2025

Civil Court Of The City Of New York, Kings County

Golden, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 30, 2025
Civil Court of the City of New York, Kings County

663 Madison Ice, LLC, Petitioner-Landlord

against
Emma Jansen, Isabel Butler, Nathaniel Bahadursingh, 
 Willa Evans, Respondent(s)-Tenant(s)

Index No. LT-325117-23

Kucker Marino Winiarsky & Bittens, LLP
747 3rd Ave, 12th Fl
New York, NY 10017 
By: Lisa Faham
Attorneys for Petitioner
Himmelstein Gribben & Joseph LLP
15 Maiden Lane, Fl 17
New York, NY 10038-5110
By: Milad Momeni
Attorneys for Respondents

Tashanna B. Golden, J.

Recitation as required by CPLR 2219(a), of the papers considered in the review of the Post-trial brief:
Papers: Numbers
Amended Stipulation of Trial Exhibits 70
Petitioner's Exhibits 71-90, 137-138
Affidavits of Fact of Petitioner's Witnesses 91-92
Petitioner's Rebuttal Affidavits 93-94
Petitioner's Post Trial Brief 95
Respondent's Post Trial Brief and Exhibits 96-136
Court File Passim
Petitioner filed this instant nonpayment proceeding on or about August 21, 2023, seeking a final money judgment in the amount of $16,924.00 and possession of the premises located at 662 Madison St, Apt 4L, Brooklyn, New York 11221 (the "subject premises") from Respondents. The Petition alleges that the subject premises is not subject to rent stabilization due to high rent vacancy deregulation.[FN1]
Each Respondent filed a pro-se answer asserting that the Petition was not served properly as required by law, rent overcharge, warranty of habitability, and general denial.[FN2]
The matter was given an initial court date of January 2, 2024. The matter was transferred to the trial part on April 5, 2024. The Respondents vacated the subject premises on or about May 31, 2024. A pre-trial conference was scheduled for September 25, 2024. On August 8, 2024, Himmelstein Gribben & Joseph LLP ("Himmelstein"), by William Gribben, filed a Notice of Appearance on behalf of all Respondents. On September 13, 2024, Himmelstein filed a motion to amend the answers and for summary judgment, as well as a request to adjourn the scheduled trial.[FN3]
On September 27, 2024, J. Jimenez granted the motion to amend in part, striking the defenses related to service/jurisdiction, and denied the motion for summary judgment.[FN4]
The matter was adjourned to November 13, 2024 for a pre-trial conference.
On November 25, 2025, J. Jimenez issued a pre-trial Order, wherein the trial was scheduled for March 27, 2025, and ordered the parties to conduct the direct testimony of the trial witnesses via affidavit. J. Jimenez set a submission deadline for all testimony and rebuttal.[FN5]
On February 28, 2025, the trial was adjourned to May 13, 2025, on consent of both parties. On May 13, 2025, the parties appeared for trial. As directed, the direct testimony was presented via affidavit. After attempts at settlement, the Parties agreed that the Petitioner had set forth its prima facie and the primary issues outstanding are Respondent's defenses and counterclaims. As such, the Parties were directed to brief the issues for the Court, with a submission date of June 30, 2025. 
Petitioner seeks a final judgment in the amount of $69,610.00 for arrears from September 25, 2022 through May 31, 2024. Respondent seeks dismissal based on alleged violation of MDL §§ 301, 302 and based on Respondent's assertion that unit was improperly deregulated. Respondent also seeks a finding of rent overcharge and a finding that Respondents are entitled to an abatement based on violation of the warranty of habitability, as well as attorney's fees and [*2]costs. 
Relevant Undisputed facts:
The Petitioner is the owner of 662 Madison St, Brooklyn NY 11221. They acquired the property in March 2018. Respondents moved into the subject premises pursuant to a written lease agreement with a commencement date of September 25, 2022, for the term of thirteen months. The lease agreement provided that it was "Free Market Lease Agreement" for the term of one year commencing on September 25, 2022 and ending on October 24, 2023, and requiring the Respondents to pay $5,000.00 per month on the first of each month.[FN6]
The Respondents vacated the premises in May 2024. 
Analysis:
Alleged Violation of MDL § 301 and § 302
Respondents argue that the instant nonpayment should be dismissed as Petitioner violated MDL §301 and §302 for illegal use of the cellar as a living unit and therefore barred from collecting rent for the subject premises. MDL §301 (1) provides that "no multiple dwelling shall be occupied in whole or in part until the issuance of a certificate by the department that said dwelling conforms in all respects to the requirements of this chapter to the building code and rules and to all other applicable law, except that no such certificate shall be required in the case of (b) Any old-law tenement, or any class A multiple dwelling erected after April twelfth, nineteen hundred one, which was occupied for two years immediately before January first, nineteen hundred nine, and in which no changes or alterations have been made except in compliance with the tenement house law or this chapter, or wherein ." MDL §302 (1) (a) provides "If any dwelling or structure be occupied in whole or in part for human habitation in violation of section three hundred one, during such unlawful occupation any bond or note secured by a mortgage upon said dwelling or structure, or the lot upon which it stands, may be declared due at the option of the mortgagee." (Emphasis added). (1)(b) provides "No rent shall be recovered by the owner of such premises for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent." 
Here, the subject building is an "old-law tenement" as evidenced by the valid I-Card dated in 1917 [FN7]
, therefore it falls within the exception of MDL §301. However, MDL §301 further states the "these exceptions shall not be deemed to relieve any owner from the obligation to make every alteration required in any old-law tenement or other multiple dwelling in compliance with the applicable provisions of this chapter." Petitioner has sought to make alterations to the subject building and has filed several work orders with the DOB, one of which was filed in 1993 and included "install[ing] minor partition work in the cellar laundry room." [FN8]
Despite the work order, a new Certificate of Occupancy ("CofO") conforming with the proposed changes was never issued, and OATH violation #35168812M was issued for the improper cellar [*3]use in February 2016. [FN9]

Petitioner concedes that when the violations were issued in 2016 the Super was living in the cellar. However, Petitioner argues that the Super has not resided in the cellar since March 2018, when they acquired the property, and that despite the lack of the conforming CofO, there was no unlawful use of the cellar during the Respondent's tenancy and therefore MDL §302 does not prohibit collection of rent. Respondents argue that MDL §302 requires strict enforcement, but the cases cited in support are factually distinguishable, in that the unlawful use remained when the matter was decided by the court. See generally Chazon LLC v. Maugenest, 19 NY3d 410 (2012) (dismissing a nonpayment petition where loft was not properly converted under the loft law at the time of commencement); 1165 Fulton Ave. HDFC v. Goings, 65 Misc, 3d 1210(A) (Civ. Ct. Bronx 2019) (dismissing nonpayment proceeding where outstanding violation for community room existed); 936 TYH RM Bronx LLC v. Brujan, 2022 NY Slip Op 33642 (U) (Civ. Ct) (finding dismissal appropriate where the dwelling's occupancy was at odds with the certificate of occupancy as evidenced by DOB violation issued shortly before the arrears period). Unlike the cases cited, there is no proof or even allegation that the basement was being used contrary to the CofO during the Respondent's tenancy. At most, the Respondent submits testimony from Ricardo Irizarry, a non-party, who testified he visited the basement on November 21, 2024 and it was divided into rooms, with a "small kitchen area and what looked like a bathroom" along with furniture. He also testified that on the same day he observed the basement, workers began removing the furniture and items and placing them into a truck.[FN10]
Irizarry did not testify that the basement was occupied on the date that he visited, or that he believed it to be occupied at any point during his tenancy or the tenancy of the Respondents. Respondents' testimony as to the condition of the basement is based solely on the information provided to them from Irizarry. As such, the Court finds that the Petitioner's testimony coupled with the testimony of Irizarry show that the basement was not being unlawfully used during Respondents' tenancy and therefore MDL §302 does not prohibit recovery in the instant non-payment. Thus, Respondent's motion to dismiss on this basis is denied. 
Alleged Unlawful Deregulation
Failure to Provide Deregulation Rider
Alternatively, Respondent seeks dismissal on the grounds of improper deregulation. Specifically, Respondent argues that Petitioner's failure to provide the required Rider to the first tenant in possession after alleged deregulation mandates a finding that the unit is rent stabilized.
There is no dispute that the Petitioner failed to provide the riders required by RSC §§ 2522.5(c)(1) and (c)(3). Such failure precludes deregulation of the subject premises. See Fuentes v. Kwik Realty LLC, 130 N.Y.S.3d 16,18 (1st Dept 2020) (failure of landlord to give first non-stabilized tenant notices required by RSL § 26-504.2(b) and RSC §2522.5(c)(1) and § [*4](c)(3) precluded deregulation).
As the Petitioner failed to provide the required deregulation rider to the first unregulated tenant, the Court finds that the subject apartment was unlawfully deregulated and that it remains rent stabilized. As such, the Petition is rendered defective due to its failure to plead the regulatory status and therefore, it must be dismissed. See Fortune Society v. Brown, 68 Misc 3d 956, 958 (Civ. Ct. Bronx County 2020) (to be entitled to relief in a summary proceeding, it is necessary that a landlord "plead rent regulatory status and compliance with the appropriate statutes and codes... and actually be in compliance therewith." Failure to do so renders the petition subject to dismissal.) (internal citations omitted). See generally RPAPL 741.
Rent Overcharge
The Court's determination that the subject premises is rent stabilized leads to the question of rent overcharge, as the Court must determine the proper rent. When this matter was commenced, the last registered rent for the subject premises was in 2013 in the amount of $2,029.47. However, the Petitioner asserts they performed IAIs which, coupled with a vacancy increase, served as the purported deregulation event. As stated supra, the Petitioner failed to provide the first tenant post the purported deregulation event the required rider. RSC § 2522.5 (c)(3) sets forth the consequences of the failure to furnish the rider. This provision states, in relevant part, that where a tenant is not furnished with a copy of the lease rider:
"the owner shall not be entitled to collect any adjustments in excess of the rent set forth in the prior lease unless the owner can establish that the rent collected was otherwise legal. In addition to issuing an order with respect to applicable overcharges, DHCR shall order the owner to furnish the missing rider, notice, or documentation. The furnishing of the rider, notice, or documentation by the owner to the tenant or hotel occupant shall result in the elimination, prospectively, of such penalty." (Emphasis added)
Based on the plain language of RSC § 2522.5 (c)(3), if the rent charged to the first tenant after the purported deregulation event was legal, that rent should be deemed the last rent.
IAI
In support of their claims for IAIs, Petitioner presents testimony via affidavit of Mendel Gold, Exhibits 9-17 which consist of invoices and accounting documentation [FN11]
as well as DOB Plans and Permits.[FN12]

RSL § 26-511(c)(13) provides for rent increases "where there has been a substantial modification or increase of dwelling space, or installation of new equipment or improvements or new furniture or furnishings provided in or to a tenant's housing accommodation, on written informed tenant consent to the rent increase. In the case of a vacant housing accommodation, tenant consent shall not be required." RSC 2522.4(a) states an owner is "[entitled to] a temporary rent increase where there has been a reasonable and verifiable modification, other than an increase for which an adjustment may be claimed pursuant to subdivision (b) of this section, of dwelling space, installation of new equipment or improvements, or new furniture or furnishings, provided in or to the tenant's housing accommodation, where the tenant has agreed to such modification or increase and the owner has obtained written informed tenant consent to [*5]such rent increase." DHCR Policy Statement 90-10 [FN13]
requires a landlord that is seeking to increase the rent based on IAIs to provide "adequate documentation which should include at least one of the following: 1) cancelled check(s) contemporaneous with the completion of the work; 2) invoice receipt marked paid in full contemporaneous with the completion of the work; 3) signed contract agreement; 4) Contractor's affidavit indicating that the installation was completed and paid in full."
Here, the Petitioner sets forth three of the four suggested documentations to support the IAI. Specifically, the Petitioner submits invoices for new HVAC units totaling $50,000.00 broken down to $6,250.00 per apartment,[FN14]
plumbing lines and connections to fixtures totaling $79,500.00 broken down to $9,937.50 per apartment, but canceled checks totaling $62,000 so broken down to $7,750 per apartment [FN15]
new flooring at a total cost of $20,000.00 broken down to $2,500.00 per apartment,[FN16]
new electrical line, outlets and breakers at a total cost of $85,461.00 broken down to $10,682 per apartment, but canceled checks totaling $63,021 broken down to $7,877.62 per apartment,[FN17]
Intercoms at a total cost of $14,986.00 broken down to $1,873.25 per apartment,[FN18]
bathroom renovation, including fixtures, at a total cost of $24,823.00 broken down to $3,102.87 per apartment,[FN19]
complete kitchen modernization including new gas ranges, refrigerator, dishwashers, and other bathroom upgrades for a total cost of $35,383.71 broken down to $4,422.96 per apartment, however, but canceled checks totaling $12,027,[FN20]
installation of interior bedroom and bathroom doors at a total of $15,950.00 broken down to $1,993.75 per apartment,[FN21]
and installation of steel and fire rated entry doors at a total cost of $6,000.00 broken down to $750.00 per apartment.[FN22]

Petitioner asserts that the IAI cost per unit was $72,862.71. However, the Court [*6]calculates the total invoiced costs to be $546,014.53, or $68,251.82 per unit. Of those invoices Petitioner has produced receipts for payment of $501,553.65 for a total of $62,694.21 per unit which is well over the $6,446.00 which would be required to meet the threshold for deregulation ($161.15 x 40). Respondent argues that the lack of specific invoices showing that the subject premises was upgraded renders the proof insufficient. However, the Court notes that the Respondent does not contest that the unit does not have the alleged upgrades. In fact, Nathaniel Bahadursingh testified that when he moved into the subject premises in 2022 that "most, if not all, kitchen and bathroom amenities and utilities looked at least a few years old."[FN23]

Additionally, Respondent asserts that Petitioner's failure to provide an affidavit from the contractor should lend a negative inference. Though the Court agrees that the Petitioner should have presented an affidavit of testimony from the contractor, the Petitioner is not required to do so if, as here, it presents adequate proof in other forms. The Court considers the numerous invoices and plans sufficient as a matter of law. "Contrary to plaintiffs' arguments, the Owner's business records provided in this case are admissible under a hearsay exception and are properly considered on the Owner's motion for summary judgment (CPLR 4518[a]; DeLeon v. Port Auth. of NY and N.J., 306 AD2d 146, 761 N.Y.S.2d 54 [1st Dept.2003]). By providing records that include itemized bills from contractors, and record of payment, such as cancelled checks, the Owner has produced sufficient information and detail to validate the 1/40th increase in the rent attributable to those improvements.[FN24]
(compare Lucas at 402—403, 955 N.Y.S.2d 19 [significant increase for improvements, but no records]; Altschuler v. Jobman 478/480, 135 AD3d 439, 440, 22 N.Y.S.3d 427 [1st Dept.2016] [affidavit provided, but no documentary proof of improvements], lv. dismissed 28 NY3d 945, 38 N.Y.S.3d 514, 60 N.E.3d 408 [2016], lv. denied 29 NY3d 903, 2017 WL 1169209 [2017] )." Taylor v. 72A Realty Assoc. LP, 151 A.D 3d 95 (1st Dept App. Div).
Under the HSTPA, the legal regulated rent for the apartment is calculated from "the most recent reliable annual registration statement filed and served upon the tenant six or more years prior to the most recent registration statement," plus any subsequent lawful increases. See Matter of West Pierre Assoc. LLC v. Harvey, 2025 NY Slip O 04611, (1st Dept, App Div). The last registered rent prior to the IAI was $2,029.47. The Petitioner alleges they spent $72,862.71 improving the subject premises, however, the Court will only credit the Petitioner for repairs that can be proven by receipt of payment, and therefore the Court finds Petitioner spent $62,694.21 improving the subject premises. Using that number Petitioner would be entitled to increase the rent by 1/40 of $62,694.21 or $1,567.35 per month in addition to the base rent and an 18.25% vacancy increase totaling $309.38.[FN25]
The Parties agree that the last registered legal regulated rent [*7]was $2,029.47 in 2013.[FN26]
Assuming the base rent is $2,338.85 (last rent + vacancy increase of $309.38) plus $1,567.35 for the renovations, the first rent after the IAI should be $3,906.20. The first lease after the IAI was submitted by Petitioner. The rental amount was $3,850.00, less than the amount permissible under the law.[FN27]
As such, the Court finds the Petitioner has established that the IAI was proper, and that but for the failure to provide the rider pursuant to RSC § 2522.5 (c)(3), the rent was legal. Thus, the Court finds that any calculation of rent overcharge will assume the legal regulated rent of $3,850.00 the amount of the first rent after the IAIs. See Queens Fresh Meadows LLC v. Beckford, 2025 NY Slip Op 50499(U) (App. Term 2d Dept) ("Where an owner fails to file a proper and timely registration, until such registration is filed, the rent is frozen at the legal regulated rent listed in the preceding registration statement.")[FN28]

Warranty of Habitability Claim
The statutory warranty of habitability codified at Real Property Law (RPL) § 235-b(1) imposes a "covenant and warrant that the premises so leased or rented and all areas used in connection therewith . . . are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety." If a breach of the warranty of habitability is proven, "the proper measure of damages for breach of the warranty is the difference between the fair market value of the premises if they had been as warranted, as measured by rent reserved under the lease, and the value of the premises during the period of the breach." (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 329 (1979)). In making this determination, "the finder of fact must weigh the severity of the violation and duration of the conditions giving rise to the breach as well as the effectiveness of the steps taken by the landlord to abate those conditions." (2590 35th St., LLC v Veleva, 74 Misc 3d 130[A], 2022 NY Slip Op 50134(U), *2 (App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022)). To succeed on a warranty of habitability claim, a tenant must also demonstrate that he or she provided access to make repairs (see 150-15 79th Ave. Owners Corp. v James, 31 Misc 3d 132(A), 2011 NY Slip Op 50606(U) (App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011); Callender v Titus, 2004 NY Slip Op 50608(U)(App Term, 2d & 11th Jud Dists 2004). 
Here, Respondents allege that between February 2023 and April 2024, they experienced several warranty of habitability violations including vermin, mold/mildew, defective laundry machines, defective front door of the building, and defective plastering on surfaces.[FN29]
In addition to their affidavits Respondents attach a tenant's association letter, email communication between the management office and the tenant's association, and two HPD violation reports. The tenant's association letter alleges repair issues throughout the building.
Specifically, as to the subject premises, the letter states that there are pests, and that all bathrooms in the subject building require mold treatments.[FN30]
Additionally, they state that the front door to the building needs repairing as well as a dryer in the laundry room.[FN31]
The emails between the Petitioner and the tenant's association show ongoing communication between March 2, 2023 through April 29, 2023 alleging pest issues, front door issues among other things.[FN32]
Additionally, the emails show the Petitioner's responses alleging that when the tickets were submitted the alleged conditions were corrected and seeking more information about access and whether the conditions continued, specifically for the subject premises, the Petitioner asks what else it can do to get them to start paying the rent.[FN33]

One HPD violation attached, violation # 17000540 shows a C violation to "Repair, Replace the Door Hinges on the Self-Closing Door" "AT BULKHEAD LEADING TO ROOF" issued on May 22, 2024. [FN34]
In July 2024 and November, HPD sought to conduct another inspection and the access was denied, the violation remains active.[FN35]
Additionally, HPD violation # 16005365 is attached and shows a "C" violation for evidence of mice droppings observed issued on May 26, 2023.[FN36]
The violation appears to be active but there is no note of additional inspections attempted after May 2023.[FN37]
Additionally, an HPD open violation summary report shows a "C" violation with the number 15957150 for mice in the subject premises issued on May 4, 2023, with a reinspection date of May 15, 2024. [FN38]
Lastly, an HPD generated printout shows a "C" violation with the number 17000542 for a defective front door of the building issued on May 23, 2024.[FN39]
Respondent Butler alleges the conditions but only speaks about the mice infestation with any level of specificity alleging seeing them "on various occasions from March 2023 to April 2024."[FN40]
Respondent Bahadursingh alleges the identical conditions as Respondent Butler and also only speaks about seeing mice occasionally from March 2023 to April 2024 [*8]specifically.[FN41]
Respondent also submits video evidence of mice in the stove and a leaking ceiling.
A tenant seeking a rent abatement bears the burden of proving dates, the intensity of the breach, and notice to the landlord. 34-15 Parsons Blvd. LLC v Zhao and Wang, 2022 NY Slip Op 50283(U)(App Term 2nd Dept). Here, the Respondents present little evidence of their communication of the issues to the Petitioner. The most persuasive evidence is an open HPD violation for mice in the subject premises in May 2023, an entire year prior to their vacate date. Additionally, they show a violation issued for the front door of the building issued in May 2024, the same month that they moved out. Outside of these violations, Respondent's only proof of the conditions is a tenant's association letter provided to the Petitioner in March 2023, and email communication that ends in April 2023. Respondents have not met their burden to prove an entitlement to an abatement as they do not provide any specific dates, nor any additional notice to the Petitioner after April 2023. Therefore, Respondent's counter claim for an abatement is denied. 
Holding:
The Court finds that while the evidence demonstrates that the Petitioner could have high rent decontrolled the unit based on IAIs, the failure to provide the rider to the first decontrolled tenant precludes deregulation. As the Petition fails to plead the regulatory status, and the rent demand is defective, it must be dismissed without prejudice per RPAPL §§ 741 and 711. However, despite Petitioner's failure to provide the rider, the Court finds the Petitioner is permitted to collect the otherwise allowable rent of $3,850.00 as a base rent. As the Court has found the subject premises to be rent stabilized, Respondent's counterclaim for Rent overcharge is granted. Respondent is therefore awarded damages in the amount of the difference of the rent overcharge for each month they were in possession of the subject premises. The Respondent's lease was for $5,000.00 per month commencing in September 2022. The instant nonpayment was commenced in August 2023 and sought payment from March-June 2023. The Respondents vacated the subject premises in May 2024. Therefore, Respondent is owed the difference between any money paid from September 2022-February 2023, which is calculated as contract rent minus the overcharge times five months ($5,000 -3,850=$1150 (x 5) =$5,750 plus interest of 9%) in over payment, for a total of $6,267.50.
Respondent's request for treble damages is hereby denied as the Court has found that the IAI was proper and lawful and therefore does not find the willfulness required for treble damages. See generally East 163rd Street LLC v. New York State Div. of Hous. & Community, 4 Misc 3d 169, (April 7, 2004). Respondent seeks attorney's fees. When a plaintiff in a lawsuit gets less relief than the plaintiff seeks, the defendant therein is not necessarily a prevailing party when the plaintiff still obtains a money judgment against the defendant, Free People LLC v. Delshah 60 Ninth LLC, 2017 N.Y.L.J. LEXIS 3255, *5-6 (S. Ct. NY Co.), as is consistent with the proposition that a party "prevails" in a lawsuit upon an outcome "substantially favorable" to that party. 157 E. 57th St. LLC v. Birrenbach, 8 Misc 3d 127(A)(App. Term 1st Dept. 2005). See also Aryeh Realty Corp. v. 18 E. 69th St. Tenants LLC, 85 Misc 3d 1 (App. Term 1st Dept. 2025) ("Given the true scope of the dispute litigated and what was achieved within that scope, landlord was not the prevailing party on the core issue between the parties.) Based on the relief sought versus the relief granted, the Court denies Respondent's request for attorney's fees. 
[*9]It is DECIDED/ORDERED:
The subject premises is rent stabilized.
The Petition is DISMISSED without prejudice.
Respondent's claims pursuant to MDL §§ 301 and 302 are DENIED.
Respondent's counterclaim for rent overcharge is hereby GRANTED.
Respondent's counterclaim for an abatement is DENIED. 
Respondent's counterclaims for attorney's fees, costs, and treble damages are DENIED.
The foregoing is the Decision/Order of this court.
Dated: September 30, 2025
Brooklyn, New York SO ORDERED
HON. TASHANNA B. GOLDEN
JUDGE, HOUSING COURT

Footnotes

Footnote 1:See NYSCEF Doc 1. 

Footnote 2:See NYSCEF Documents 4-7. 

Footnote 3:See NYSCEF Documents 11-35.

Footnote 4:See NYSCEF Document 40. 

Footnote 5:See NYSCEF Document 42.

Footnote 6:See NYSCEF Doc 97.

Footnote 7:See NYSCEF Doc 31.

Footnote 8:See NYSCEF Doc 32. 

Footnote 9:The Court notes that Respondent also alleges that OATH Violation #35489296M "further identified that the cellar had been converted into a dwelling unit contrary to law." However, Violation #35489296M does not mention the cellar but instead speaks to the illegal addition of rooms in apartment 4L. See NYSCEF Doc 111. The violation is dated September 14, 2020, and a certificate of correction was submitted on March 12, 2021.

Footnote 10:See NYSCEF Doc 132. 

Footnote 11:See NYSCEF Docs 73-84.

Footnote 12:See NYSCEF Doc 60, Pet Exh. 18.

Footnote 13:See NYSCEF Doc 127, Resp Exh Q

Footnote 14:See NYSCEF Docs 77 Pet Exh 10A and B

Footnote 15:See NYSCEF Doc 78 Pet Exh 11A and B

Footnote 16:See NYSCEF Doc 79 Pet Exh 12A and B

Footnote 17:See NYSCEF Doc 80 Pet Exh 13A and B

Footnote 18:See NYSCEF Doc 81 Pet Exh 14A and B

Footnote 19:See NYSCEF Doc 82 Pet Exh 15. The Court notes that this invoice acknowledges charges totaling $26,456.63 but reflects installation of only 4 units, therefore the court has reduced the overall invoice and per unit cost to reflect only the cost of the materials since there is no indication that the subject unit required installation.

Footnote 20:See NYSCEF Doc 83 Pet Exh 16A and B and 17A and B

Footnote 21:See NYSCEF Doc 84 Pet Exh 17

Footnote 22:See NYSCEF Docs 74 and 75 Pet Exh 9A and 9B

Footnote 23:See NYSCEF Doc 131 

Footnote 24:The Court notes the calculations are based on the permissible allowances at the time of the alleged IAIs which predate the HSTPA.

Footnote 25:In their brief, the Respondent accepts the maximum vacancy increase permissible under RSC § 2522.8(a) of 20%, which would increase the legal regulated rent to $2,435.26, which would mean that the Petitioner had to show IAIs of at least $64.64 to meet the $2,500.00 threshold for deregulation. However, the Petitioner states they took an 18.25% vacancy increase.

Footnote 26:See NYSCEF Doc 55, Pet Exh 3.

Footnote 27:See NYSCEF Doc 85.

Footnote 28:This finding renders the rent demand defective pursuant to RPAPL 711.

Footnote 29:See NYSCEF Doc # 130

Footnote 30:See NYSCEF Doc # 98

Footnote 31:Id

Footnote 32:See NYSCEF Doc # 99

Footnote 33:Id at pg 6

Footnote 34:See NYSCEF Doc # 113

Footnote 35:Id 

Footnote 36:See NYSCEF Doc # 114

Footnote 37:Id

Footnote 38:See NYSCEF Doc # 115

Footnote 39:See NYSCEF Doc # 116

Footnote 40:See NYSCEF Doc 130

Footnote 41:See NYSCEF Doc # 131